## City of El Paso v. Mundy Brothers et al.

### No. 7596.

**City Charter Construed — Power to Tax—Street Improvements.** In the charter of the city of El Paso is the following section: "The city council shall be invested with full power to grade * * * any avenue * * * within the limits of the city whenever * * * provided, the city council shall pay one-third and the owners of the property two-thirds thereof, except the intersection of the streets, from lot to lot, across the streets either way, which shall be paid for by the city alone." Improvements were made upon a public street, and the city authorities were proceeding to sell lots abutting on said street to pay assessments made for the improvements. The lot owners obtained an injunction, and the city reconvened, asking judgment for the tax due from each of the plaintiffs, etc. The above section was the only authority for the tax. *Held:*

1. The city had no power in the premises not conferred by its charter, and that is silent with respect to a lien upon property for the purpose of improving a street.

2. While the charter plainly shows an intention to create a personal obligation, and not a charge upon property, it fails to mention who are the persons to be charged, or to prescribe any rule by which this can be ascertained.

3. There is no mode of ascertaining who are "the owners of the property," or in what proportion such owners. if ascertained, should pay.

4. The injunction was properly perpetuated restraining the collection of such. assessments.

Appeal from El Paso. Tried below before Hon. T. A. Falvey.

*J. P. Hague* and *Waters Davis*, for appellants.—1. The court erred in failing to decree to the city of El Paso a recovery against each of the plaintiffs for the amounts shown by their petition to be due and owing to said defendant on account of street work, for the reason that the court had jurisdiction to render judgment for said amounts. The District Court having obtained cognizance of the case for one purpose, should retain it for the further purpose of doing full and complete justice between the parties, and should render judgment for the amount shown to be unpaid, though it be less than $500. Chambers & Thigpen v. Cannon, 62 Texas, 293; Stein v. Freiberg, Klein & Co., 64 Texas, 271; Willis v. Gordon, 22 Texas, 241; Witt v. Kauffman & Kleaver, 25 Texas Supp., 384; Seymour v. Hill, 67 Texas, 385; Hale v. McComas, 59 Texas, 484.

2. The city under authority of law having entered into written contract with the contractors for the improvement, and made itself primarily liable for the full cost of construction, upon the payment of said cost of construction became subrogated to the rights of the contractors under said contracts, and its claim against appellees would be founded upon said written contracts. Rev. Stats., art. 3205; Sublett v. McKinney, 19

Texas, 438; Galveston v. Heard, 54 Texas, 432; Dill. on Mun. Corp., 482, 810.

*Davis, Beall & Kemp; Bailey, Hunter & Foster,* and *Peyton F. Edwards,* for appellees.—The appellees submit that the decision of this cause depends upon the correct legal answer to three questions:

1. Did the charter of the city, and its ordinances and acts thereunder, create a lien on the lots abutting on El Paso Street for the amount expended in improving the street, and authorize the city to enforce same by sale of the abutting lots?

2. If not, did the charter and ordinances and acts of the city create a liability inthe nature of debt on the part of said lot owners to pay for said improvement?

3. If both or either of the above questions are answered in the affirmative, were the city's causes of action set up in its cross-bill barred by the statute of limitations of two years?

There are no assignments of error by appellant presenting the question that the amounts claimed by the city are a lien on the lots of plaintiffs. This answers the first question in the negative.

No part of the work of macadamizing, grading, curbing, or guttering a street, expended by the city of El Paso, can be collected as a personal debt against the owner of a lot abutting on a street so improved. Const., art. 1, sec. 19; Cool. on Tax., 418, 464; Burr. on Tax., 436, 471, 472; Dill. on Mun. Corp., secs. 89, 91, 604, 752, 765, 769; Allen v. Galveston, 51 Texas, 302; City of Bryan v. Page, 51 Texas, 532; Williams v. Davidson, 43 Texas, 1; Dwyer v. Hackworth, 57 Texas, 245; Waxahachie v. Brown, 67 Texas, 519.

It being admitted, that if the city had any claims against the plaintiffs for the sums attempted to be assessed against them separately as abutting lot owners, the same had accrued more than two years before the appellant filed its cross-demands asking judgments in personam, the same were barred by the statute of limitations.

The city having no power to assess street improvements against the lots, the pretended assessment is not a tax; and if it was, article 4777, section 16, does not apply to this character of tax. City of Galveston v. Heard, 54 Texas, 446; Cool. on Tax., 300; Danford v. Williams, 9 Mass., 234.

The injunction sued out by plaintiffs, being for the sole purpose of preventing the sale by the officers of the city of the lots of plaintiffs to enforce collection of assessments, did not in any way interfere with the city's power to enforce by suit the liens, if any, claimed against each plaintiff, and did not suspend the running of the statute. High on Inj., sec. 87.

HENRY, ASSOCIATE JUSTICE. — This suit was brought by upwards of fifty property owners against the city of El Paso, to restrain the sale by the city of certain lots, belonging to the plaintiffs, separately, fronting on El Paso Street.

The petition charged that the city was endeavoring illegally to enforce an assessment for improving said street.

The original petition was filed on the 4th day of June, 1888, and a writ of injunction was issued on the same day.

The defendant, on the 19th of February, 1890, filed its first amended answer, setting up for the first time counter-claims against the plaintiffs for the several amounts assessed against each plaintiff's lot, stating the amount claimed against each separately, and prayed for a foreclosure of liens on said lots respectively for said amounts, and in the alternative, if it was no lien, for judgment in personam.

On February 20, 1890, the plaintiffs filed their first supplemental petition, in which they alleged that the court did not have jurisdiction to render said judgments in personam, as each amount claimed was less than $500, and set up the statute of limitations of two years, both by demurrer and special plea, and also pleaded a general denial of the defendant's cross-bill.

The suit was tried before the judge, and a general judgment was rendered for the plaintiffs.

The appellees submit that the decision of this cause depends upon the correct legal answer to three questions:

" 1. Did the charter of the city, and its ordinances and acts thereunder, create a lien on the lots abutting on El Paso Street for the amount expended in improving the street, and authorize the city to enforce same by sale of the abutting lots?

" 2. If not, did the charter and ordinances and acts of the city create a liability in the nature of debt on the part of said lot owners to pay for said improvements?

" 3. If both or either of the above questions are answered in the affirmative, were the city's causes of action set up in its cross-bill barred by the statute of limitations of two years?"

We think that these questions fairly present all of the issues raised by the assignments of error, and more than are necessary to be considered by us in determining this appeal.

So much of the charter of the city as relates to these issues reads as follows:

" Section 130. The city council shall be vested with full power and authority to grade and macadamize, pave, repair, or otherwise improve any avenue, street, or alley, or any portion thereof, within the limits of the city, whenever, by a vote of two-thirds of the aldermen elected or appointed, they may deem such improvement for the public interest; pro-

vided, the city council shall pay one-third and the owners of the property two-thirds thereof, except the intersection of the streets, from lot to lot across the streets either way, which shall be paid for by the city alone."

The city had no power in the premises not conferred by its charter, and that is silent with regard to a lien upon property for the cost of improving a street.

This court has announced its adhesion to the rule stated by Mr. Cooley, that "such a power, when plainly granted, is to be construed with strictness, and as strictly pursued by the authorities who are to levy the tax." Cool. on Tax., 609; Allen v. Galveston, 51 Texas, 318.

It must be held that no lien upon property was given by the charter. The only obligation that it mentions is a personal one against "the owners of the property."

Before assessments for a local improvement can be levied and collected, either upon property or against its owner, there must be competent legislative authority. "The district of assessment must either be prescribed by the Legislature, or some method of determining it must be given, and the rule of apportionment must be laid down." Cool. on Tax., 653.

"They can only be levied under authority of positive constitutional or statutory law, generally found in the act of incorporation of towns and cities, or some special or general statute conferring the power. The measure of the power when authorized, and the mode of its exercise, must be sought for in the statute creating the municipal corporation, or conferring upon it the powers to be exercised." Welty's Law of Assess., 415.

The only question that we think it necessary to consider in this opinion is, whether or not the authority to levy and collect the tax, and the manner of its exercise, were sufficiently provided for by the charter under which the city was at the time acting.

The section of the charter above quoted is conceded to have been then in force. We have examined the charter of the city without finding any other or additional authority to impose or collect the tax.

While the charter plainly shows an intention to create a personal obligation, and not a charge upon property, it utterly fails to mention who are the persons to be charged, or to prescribe any rule by which they shall be ascertained. It neither by its own terms, nor by conferring the authority to do so upon some other body or tribunal, makes the necessary provision for determining who shall be required to pay the assessment.

It is charged by the charter only "upon the owners of the property," but of what property is in no way specified. By adding to it words that are usually found in such charters, we might conclude that the owners of lots fronting on the improved part of the street were intended, but it is not so expressed in the charter. That does not specify whether it is a charge upon real or personal property, or upon both, or if upon either, where it is situated. The words "the property" can not refer to the

land on which the work is done, because that is a public street, and yet they do not literally apply to anything else. If we were at liberty to supply words so as to make the charge apply to owners of property benefited by the improvement, we would still be unable to say that no property was benefited in some degree except the lots that abut on the street; and if this difficulty was removed, and it could be ascertained who "the owners of the property" intended are, still we would not know by what rule it was intended that the proportion of the whole expense to be paid by the different owners should be ascertained. The charter does not even say that the charge shall be against the owners of property that is "benefited" by the improvement.

The charter, neither by its own terms nor by delegation of authority to another, provides for the ascertainment of the proportionate part of the entire cost which each property owner shall be required to pay. The method of apportioning the cost of the improvement is of vital importance. Different plans are pursued, all of which have met with more or less criticism and objection as being contrary to the principle upon which the authority rests, if not unconstitutional, but which have been upheld by the courts when prescribed by the Legislature.

The charter could have provided for payment to be made by abutting owners, according to frontage or value, and in proportion to the cost of the entire improvement, or of each block, or in other specified modes, having due regard to benefits received and equality; but it not having done so directly nor indirectly, the courts can not supply the omission.

We deem it unnecessary to consider other questions presented by the assignment of errors.

As authority was not conferred upon the city by its charter to make any part of the cost of the improvement a charge upon the property of the plaintiffs, nor against them personally, the judgment must be affirmed.

*Affirmed.*

Delivered June 24, 1892.