CITY OF DALLAS v. W. P. ELLISON.

No. 628.

1. **City Street Improvements—Local Assessments.**—A provision of a city charter, that before the city council shall determine to have local street improvements made, the city engineer shall report the probable cost and give the names of the owners of property abutting on the street, and the number of front feet owned by each party, is mandatory, and compliance therewith is essential to a valid assessment of a special tax for such improvements.

2. **Same—Power Strictly Construed.**—If the Legislature has authority to empower the city to impose the entire costs of improving streets upon abutting property owners, such authority must be clearly given and the mode strictly followed, or the assessment will not be valid.

3. **Same—Repeal and Change of Charter.**—Under a city ordinance which did not levy any assessments to pay for the work, or make any provision as to the time of payment of the assessments when levied, a contract for street improvements was let. About or soon after the completion of the work the city charter was repealed, and the new charter did not contain any saving clause in reference to executed contracts, and its provision imposed a larger proportion of the cost of such improvements upon abutting property holders than the former charter. *Held,* that the new charter would not authorize the levy of such a tax upon abutting property owners to pay for improvements already completed.

4. **Same—Levy to Satisfy Past Contract.**—A provision of a new city charter, that "all contracts for street improvements now outstanding shall be paid for in accordance with this charter," will not authorize the levy of a local assessment upon abutting property owners to pay for improvements that have been completed and have been paid for by the city.

5. **Same—Estoppel—Illegality of Method.**—Owners of property abutting on a street are not estopped from denying the validity of an assessment to pay for the street improvements, because they petitioned the city to have the work done, and stood by and saw it done, since they did not petition to have it done otherwise than in a legal manner.

APPEAL from Dallas. Tried below before Hon. CHARLES FRED. TUCKER.

*A. P. Wozencraft,* for appellant.—1. Under the charter at the time of the ordinance ordering the improvement, the ordinance levying the tax was required to be passed after the contract was let, and was required to show the time of the payment of the taxes, and when the same should become delinquent; and the ordinance ordering the improvement was not required to prescribe the time when the tax should be paid. City Charter of Dallas, sec. 15.

2. The report of the engineer as to the probable amount of the cost was not made a condition precedent to the right of the city council to order the improvement and to have the same made. The report was a condition subsequent to the determination of the council to have the improvement made, and therefore was not jurisdictional; and the failure to receive said report will not defeat the assessment. City Charter of Dallas, secs. 15, 176.

3. The owner of·the property abutting on a street improved by a city has no contractual relation with the city or with the contractor until the passage of the ordinance levying the special tax for the payment for the same. He has no right to a levy of the tax to pay for such improvement in accordance with the charter in existence at the time the contract is let. He is first brought into relation with the city and the contractor, and his right to any particular form or amount of levy for the first time accrues, when the ordinance levying the tax is passed. Therefore the levy must be made according to the provisions of the city charter in force at the time it is made. Dallas City Charter, 1889, sec. 154; Merriweather v. Garrett, 102 U. S., 472; United States v. Railway, 17 Wall., 322; Commissioners v. Lucas, 93 U. S., 108; Locpe v. New Orleans, 4 Wall., 172; Saterlee v. Mathewson, 2 Pet., 380; Webb v. Weatherford, 17 How., 576; Cool. on Tax., p. 73; Story on Const., 5 ed., 387; Cool. Const. Lim., 5 ed., 238; Dill. Mun. Corp., 4 ed., secs. 68a, 85, 772–810, and notes; The People v. Morris, 13 Wend. (N. Y.), 325; Newman v. Sylvester, 42 Ind., 106; Dyer v. Borston, 50 Cal., 652; Burlington v. Palmer, 67 Iowa, 681; Lohram v. Eyerman, 5 Mo. App., 481.

4. The city of Dallas being an actual and necessary party to said contract under its charter, and having paid the contractor the full cost of the improvements as provided in the contract, was and is subrogated to all the rights that the contractor for said improvements had or might have had to the collection of said special tax and to a lien on the abutting property to secure said payment. Fievel v. Zuber, 67 Texas, 275; Oury v. Saunders, 77 Texas, 280; Hart v. Davidson, 84 Texas, 115, 116; French v. Grenet, 57 Texas, 273; King & Fordtran v. Brown, 80 Texas, 276; Land and Loan Co. v. Blalock, 76 Texas, 85; Harrison v. Ilgner, 74 Texas, 86; Dill. Mun. Corp., sec. 822, and note; Emmert v. Thompson, 52 N. W. Rep., 31; Jordan v. Sayre, 10 South. Rep., 823; Philadelphia v. Wistar, 35 Pa. St., 427; Palmyra v. Morton, 25 Mo., 593; New York v. Colgate, 12 N. Y., 140.

5. Plaintiffs having petitioned the city council to make the improvements according to the plans and specifications under which said improvements were made, were estopped to complain that said plans and specifications were not regularly adopted by an ordinance of the city. Westbrook v. Guderian, 22 S. W. Rep., 59; Elliott on Roads and Streets, 419–422, 436, 437; Desty on Tax., 1424, et seq.; Dill. Mun. Corp., secs. 923, notes, 801, 990; High on Injunc., 2 ed., sec. 549; Big. on Estop., 5 ed., 691, 692; Rector v. Board of Improvement, 50 Ark., 116; Jenkins v. Steller, 118 Ind., 275; Hammesling v. Kansas, 26 Pac. Rep., 496; Mats v. Detroit, 18 Mich., 495; Katz v. Bedford, 77 Cal., 319; Byrom v. Detroit, 50 Mich., 56; Evansville v. Pfisteres, 9 Am. Rep., 214.

6. An owner of property abutting on a street who petitions the city council to make street improvements, and induces the council to expend money in the improvement of his property, knowing that the

law requires him to pay for the same, and who stands by and permits such improvement to be made in accordance with his petition, and makes no objection to any matter preliminary to the letting of the contract for such improvement, or to the manner of the performance of such improvement, is estopped to complain of any irregularity preliminary to the letting of the contract therefor, or of the manner in which the improvement is made, or the price paid therefor; and can not, after receiving the benefit of such improvement, escape from paying a special assessment levied for its payment. Cross v. Kansas, 6 West. Rep., 446; Columbus v. Alger, 5 West. Rep., 783; Twiss v. Port Huron, 6 West. Rep., 359; Pepper v. Philadelphia, 5 Cent. Rep., 693; Tabor v. Ferguson, 7 West. Rep., 374.

*R. E. Cowart* and *W. P. Ellison*, for appellee.—1. The authority to make local assessments can·be exercised no further than it is clearly given; and if the mode in which the power shall be exercised is prescribed, that mode constitutes the measure of the power. The language by which such·grant of power is conferred is always strictly construed against the municipality and in favor of the property owners. Allen v. Galveston, 51 Texas, 302; 2 Dill. Mun. Corp., sec. 769, note 1.

2. The ordinance of March 30, 1888, under which Ervay street was graded and macadamized, should have made provision for the time within which the assessments therefor should be paid. Charter of Dallas, 1876, secs. 15, 176; Endlich Interp. of Stats., sec. 216.

3. A report of the city engineer giving the probable cost of the work, together with the names of the owners of the abutting property and the number of front feet owned by each, was, under the charter of Dallas of 1876, a condition precedent to the valid exercise of power by the council to order a street graded and macadamized. Charter of Dallas, 1876, secs. 15, 176; Frosh v. Galveston, 73 Texas, 409; Elliott on Roads and Streets, 428.

4. An assessment for local improvements must not be levied under the authority of and according to the rule prescribed by the charter— and the ordinance enacted thereunder—in force at the time of the passage of the ordinance ordering the work, and of the letting of the contract therefor. City of Cincinnati v. Seasongood, 27 Am. and Eng. Corp. Cases, 168; same case, 46 Ohio St., 296; Nicklaus v. Conklin, 20 N. E. Rep. (Ind.), 797; Post v. City of Passaic (N. J.), 28 Atl. Rep., 553.

5. The city of Dallas having omitted to levy the tax for paving of Ervay street after contract let under the charter of 1876, was deprived of all power, and will be held to have waived the right to levy such tax after the passage of the charter of March, 1889, for the following reasons: (1) That the charter of March, 1889, repealed the charter of 1876. (2) Because the only power to levy a local assessment which could be exercised under the Act of 1889 would be by a different and more burdensome rule than under the charter of 1876, and as contem-

plated by the ordinance of March 30, 1888. Charter of March, 1889, secs. 120, 154, 196; Charter of 1876, sec. 120; Allen v. Galveston, 51 Texas, 302; Essex v. Shinkle, 140 U. S., 339; Tippecanoe Co. v. Lucas, 93 U. S., 108; Dill. Mun. Corp., 61, 62, 70; Cincinnati v. Seasongood, 27 Am. and Eng. Corp. Cases, 168.

6. Where property owners petition for local improvements, they are presumed to petition that the power to order and the subsequent proceedings in performing work be exercised according to law and under the charter provisions governing the same, and are not estopped to set up the fact that the proceedings had in the particular case were without power or jurisdiction. Frosh v. Galveston, 73 Texas, 409; Allen v. Galveston, 51 Texas, 302; Wilson v. Salem, 34 Pac. Rep., 9; McLaurin v. City of Grand Forks, 27 Am. and Eng. Corp. Cases, 161; Vicker v. Schott, 31 Weekly Law Bulletin, 335.

7. The ordinance under which local improvements are authorized constitutes the foundation of the power to order the particular improvement, and a valid ordinance enacted in the manner prescribed by the charter is necessary to the jurisdiction of the city council to order such improvement. The ordinance of March 20, 1888, is insufficient to confer such jurisdiction, because it does not prescribe the manner in which Ervay street should be paved, and does not adopt plans and specifications, but contemplates plans and specifications thereafter to be adopted, is not positive and final, and all proceedings thereunder were null and void. Allen v. Galveston, 51 Texas, 302; Lufkin v. Galveston, 56 Texas, 533; Elliott on Roads and Streets, 380, 429; Welty on Local Assessments, sec. 282; Dill. Mun. Corp., secs. 69, 779; 24 Am. and Eng. Encyc. of Law, 28.

8. In exercising the power to levy local assessments, the mode prescribed by the charter constitutes the measure and limit of the power, and if any other mode or rule is adopted the levy will be void, even though more beneficial to the property owner. Allen v. Galveston, 51 Texas, 302; The State v. Portage, 12 Wis., 562; Welty on Local Assessments, sec. 291; Cool. on Tax., 1 ed., 448.

LIGHTFOOT, CHIEF JUSTICE.—This is a suit by appellee on his own behalf, and on behalf of thirty-one other taxpayers on Ervay street, in the city of Dallas, Texas, against the city to enjoin the collection of a special tax for local street improvement, upon numerous grounds set out in the petition. The injunction was granted, and after answer filed and hearing in the District Court, the injunction was perpetuated, at the cost of the city, from which judgment this appeal is taken.

It will not be necessary to notice in detail all the numerous assignments of error; but we will only consider such points as we may deem necessary to a decision of the case.

Plaintiff's petition sets out in full section 15 and section 176 of the Dallas city charter, which were in force at the time the improvements

were ordered, which sections are admitted to be correct, and are as follows:

"Section 15. That the city council shall have power by ordinance to cause to be graded, paved, macadamized, graveled, or otherwise constructed, improved, or repaired, all streets, sidewalks, or alleys and public highways, including the cross streets in the city limits, at such times, to such extent, and out of such material as the city council may provide by ordinance. The owners of property fronting or abutting on any street so improved shall pay pro rata the costs of two-thirds of such improvements according to the number of front or abutting feet, and the city shall pay the other third. Provided, that whenever any person or corporation owns or runs a street or horse railway on such street, avenue, or alley, such person or corporation shall pay for that part of the street between the rails of such street railway, and the owners of the fronting or abutting property shall be relieved of their pro rata of such sum so paid by the owner or owners of such railway.

"The city council shall have improved in the same manner as the rest of the street all the intersections of streets when they cross the streets so improved, and to the middle of the street where another street enters into but does not cross the street so improved. The improvements of intersections or abutments of other streets to be paid for out of the general fund, except that portion of said improvement which may be occupied or used by said railways or street railroads, which must be paid for as hereinabove provided for other portions of said road by the persons or corporations owning or operating the same.

"Whenever the city council shall determine by ordinance that such work shall be done, and the manner and extent of the same, they shall advertise for bids, giving the plans, specifications, and extent of improvements. The work to be let to the lowest responsible bidder in the discretion of the city council, and with such bonds as the city council may determine.

"Said council shall levy a special tax on the property fronting or abutting on said street so improved pro rata according to the number of feet front or abutment, and when street railways or street railroads are operated on a street so improved, the council shall levy a special tax on the roadbed, ties, rails, fixtures, rights, and franchises of such roads according to the pro rata share of the expense of such improvement, that may be due from said roads for paving the space between the rails. Said tax shall be levied *after contract is let*, and the time of payment of the same and when it shall become delinquent shall be specified by ordinance. Said tax shall be used *for the payment of said* improvements, shall be a lien from the time of the levy, and shall be enforced as the collection of other taxes by advertisement and sale of the property rights and franchises levied upon; provided, it shall not .be necessary to sell at the same time as for other delinquent ad valorem taxes. If said special tax shall not be paid in full in ten days from

the completion of said work and the levy of said special tax, the assessor and collector shall proceed at once to advertise and sell 'said property for the special tax due thereon, giving the same notice and executing similar deed as is given when property is sold by the city for ad valorem taxes. Provided, the city council may in its discretion make the special paving tax delinquent, as follows: one-fourth of the total amount of levy to be due in thirty days, and delinquent in sixty days after levy; one-fourth to be due and delinquent in one year from the date of the levy; one-fourth in two years, and one-fourth of the entire levy due and delinquent in three years from the date of the levy of said tax. Said tax to be levied and collected in the same manner as heretofore provided, and to be a lien on all property against which it is levied."

"Section 176. In all cases where the city council may deem it necessary, and in all cases where the majority of the owners along any street, avenue or alley shall petition to have the same graded or macadamized, the city council shall have the work done as soon as practicable. The city council is to pay one-third of all expenses of such grading or macadamizing, and the owners of property on either side two-thirds; and when it shall be determined by the city council to have said work done, the engineer shall make an immediate report of the probable cost of such work, and at the same time give the names of those owning property on either side of the street, and the number of front feet of each party. The city council shall levy a special tax on all such property to pay the two-thirds of cost for which it shall be liable, and such tax when levied shall be a lien; and if such special assessment be not paid within the time prescribed by the ordinance directing such improvement, then the assessor and collector shall proceed to advertise and sell as in other cases; provided, the cost of repairing and keeping in repair and paving and macadamizing of all streets shall be paid out of the general revenue of the city."

The said sections were in force at the time the improvements were ordered, and continued in force until March 13, 1889, at which time the new charter was granted to the city of Dallas. The ordinance ordering Ervay street improved, approved March 30, 1888, and set forth in plaintiff's petition, is as follows:

"An ordinance ordering Ervay street improved. Section 1. Be it ordained by the city council of the city of Dallas, that *curbing* and *guttering* are hereby ordered and established on Ervay street, and it is hereby ordered to be graded, improved, and paved from Commerce street to the city limits; all of said improvements to be made in accordance with the plans and specifications as the city council may adopt therefor.

"Section 2. That the owners of property fronting or abutting on said street between said points shall pay the entire costs of said curbing, and two-thirds of the cost of paving, according to the number of front or abutting feet, and the city shall pay the other third. Provided,

that the persons or corporations owning or operating the street railroad on said street so improved shall pay for that part of the street between the rails of said road; and said property owners shall be relieved of their pro rata of such sum so paid by the persons owning or operating such street railroad. The city shall also pay for paving the street intersections along said improved street, except the portion thereof occupied by the track of said street railroad, which must be paid for as other portions of said road.

"Section 3. That the city council shall levy the necessary tax for said improvements in accordance with this ordinance, and the provisions of the city charter in such cases made and provided.

"Section 4. That this ordinance take effect from its passage.

"Approved March 30, 1888."

Under this ordinance the city entered into a contract, dated June 28, 1888, with R. C. Storey, whereby he agreed to excavate, grade, and macadamize or pave Ervay street from Commerce street to Gano street, according to plans and specifications, under the supervision of the city engineer, said work to be completed by October 1, 1888.

By the Act of the Legislature of the State of Texas, approved March 13, 1889, the following provision was substituted for the former provisions of the city charter of the city of Dallas governing and controlling street improvements: "Section 154. The city council shall have full power and authority to grade, fill, raise, repair, macadamize, remacadamize, pave, repave, or otherwise improve any avenue, street, or alley, or any portion thereof in the city, to such extent and out of such material, and under such regulations as the city council may provide, whenever a majority of the aldermen present vote in favor of such improvement. All grading of streets and sidewalks shall be at the cost of the city. All repairing of streets shall be at the cost of the city, unless herein otherwise provided. The word 'repairing' as herein used shall apply only to small or ordinary defects in streets that have been put to grade and paved or macadamized. All other improvements shall be entirely at the cost of the fronting or abutting property owners on each street so improved, who shall pay pro rata such entire cost according to the number of front or abutting feet respectively owned by them on such street; provided, that when any person, corporation, or company owns or operates any street railroad or railroad of any kind on such street, avenue, or alley, such person, corporation, or company shall pay for paving or otherwise improving that part of the street between the rails of such road, and the owners of fronting property shall be relieved of their pro rata of such sum so paid by such roads. The city shall, out of the general fund, pay for all street intersections so improved, except that portion occupied or used by said railroads, which must be paid as above provided by the owners or operators thereof. Property owners shall pay the entire cost of all curbing. The pro rata share of the costs of such improvements due from property owners and said railroads as above provided, to-

gether with the expense of collecting the same, shall be a special tax and lien against the lot or blocks fronting or abutting upon the streets improved, and against the roadbed, ties, rails, fixtures, rights, and franchises of such street or other railroads that may be operated thereon.   The city council shall, by resolution duly passed, designate the street or streets, avenues, or alleys, or portions thereof, to be improved, the nature of the improvements to be made, and the material to be used.   Whenever the city council shall so determine upon such improvement, they shall advertise for bids, giving the plans, specifications, and the extent of the improvements.   The work shall be let to the lowest responsible bidder in the discretion of the council, and with such bonds as the council may require.   Said council shall levy a special tax on the property fronting or abutting on the street so improved for the pro rata amounts due from property owners, and when street or other railroads are operated on said street, the city council shall levy a special tax upon the roadbed, ties, rails, fixtures, rights, and franchises, of such road for the pro rata share due from them for improving the space between the rails of such road.   Said tax shall be levied *after* contract is let; shall become due and delinquent as the ordinance levying the same may specify; shall be a lien from the time of the levy, and shall be used for the payment of said improvements.   If said taxes shall not be paid as provided for by ordinance, their collection shall be enforced as the collection of other taxes, by advertisement and sale of the property, rights, and franchises levied upon; provided, it shall not be necessary to sell at the same time as for delinquent ad valorem taxes.   At such sales the collector shall execute to the purchaser a deed similar to the one executed when property is sold for ad valorem taxes.   All contracts for street improvements now outstanding shall be paid for in accordance with this charter, and the city council in making the levy of assessment to pay for said improvements shall make them under the provisions of this section.

"Section 155.   In all cases of special assessment for local improvements of any kind against any property, persons, or corporations whatsoever, and said assessments shall have failed to be valid in whole or in part because for the want of form, insufficiency, or non-compliance with the charter provisions governing such assessment, the council shall be and are hereby authorized to reassess said special taxes or assessments, and to enforce their collection in accordance with the charter provisions existing at the time the reassessment is made."

By an ordinance of the city council, approved June 25, 1889, a tax was levied upon all property fronting or abutting on both sides of Ervay street, from Commerce street to Gano street, for the amounts named in the ordinance, being so much against such property owner per front or abutting foot to pay for paving or macadamizing, and 52 cents for curbing; and providing, that all of such special tax shall become due in ten days from the passage or the ordinance, and delin-

quent if not paid within thirty days from that time, and to be a lien on said property from date of levy, and if not paid within the required time, collection to be "enforced by the city collector in accordance with the provisions of the city charter in such cases made and provided."

Appellees having refused to pay the special tax, the city collector advertised their property for sale, which sale was enjoined.

*Opinion.*—The first point which we deem it important to notice is under appellant's sixth assignment of error, in which it complains of the court below in overruling its special exception to the allegation in plaintiffs' petition, which sets out that the ordinance of the city under which the contract was made was void: "Because said ordinance of March 30, 1888, was not such an ordinance as in cases as above mentioned the city council of the city of Dallas had power to pass, for the reason, that by the terms and provisions of said Act of 1876, and the acts amendatory thereof, it is required, that before the city council shall have power to pass any such ordinance in such cases the engineer of said city should make an immediate report to the city council aforesaid of the probable cost of the work then and there determined upon, giving the names of those owning property on each side of the street to be improved, and the front feet owned by each of said owners." The complainant averred, that no such report was ever at any time made to said council by said engineer, or any other proper officer of the city; but said ordinance was passed by said council without such report.

The charter of the city at the time the ordinance was passed expressly provided as follows: "And when it shall be determined by the city council to have said work done, *the engineer shall make an immediate report of the probable cost* of such work, and at the same time give the names of those owning property on either side of the street, and the number of front feet of each party."

It can be clearly seen that this report was necessary, so as to determine, before such work should be ordered, the probable cost, and upon what property the improvement should become a charge. The provision in regard to the ordinance directing when the special assessment shall be paid is not so clear.

In the case of Frosh v. City of Galveston, 73 Texas, 409, where a tax was sought to be levied under a statute somewhat similar to this, requiring a report of the engineer before the work should begin, the Supreme Court said: "The charter of the city clearly requires, that before the council shall determine whether or not the improvement shall be made, a report shall be made of its probable costs, etc.

"This report is made a condition precedent to the exercise of the power to order the work to be done. Its design is to furnish useful and proper information expressly required to be considered when the determination of the council is made, and being made by the law a

condition precedent to the exercise of the power, it can not be disregarded either by the council or the court, nor can either one or the other regard the requirement as immaterial or treat it as merely directory.

"It is certainly not less important in public than it is in private enterprises to learn the cost of any improvement before it is entered upon.

"The cost of the improvement as estimated by the preliminary enquiry has nothing to do with paying for it, as that must be done according to its actual and not its estimated cost. The sole, and we think sufficient, reason for estimating carefully the probable cost before the work is ordered, and having the information laid before the council, is to enable them to say whether the necessity and importance of the work justifies the expenditure, as may not always be the case, or whether the always limited pecuniary resources of the city will be sufficient for the discharge of the debt. This would be a prudent thing to do, even if the law did not expressly enjoin it.

"In this instance the required report has not been made, nor had the evidence required by the law as a predicate for the judgment of the council been produced. Instead of that, the judgment was first pronounced, including a direction for the facts to be ascertained and reported afterwards." See also Wood v. City of Galveston, 76 Texas, 132.

In the case of Flewellin v. Proetzel, 80 Texas, 195, 196, Judge Gaines said: "It is not to be doubted that in order to enable a municipal corporation to charge the owners of property abutting on a street with the cost of its improvement, the power must not only be expressly conferred by law, but the provisions of the law must be strictly pursued. The successive steps directed to be taken preliminary to ordering the work to be done, the manner of letting the contract, and the mode of constructing the improvement, when provided for in the law, are intended for the protection of the property owner, and are his safeguards against the exercise of arbitrary power. Each act required to be done is essential to the exercise of the jurisdiction, and each must be rigidly performed. The courts can not say that the omission of some requirement is unimportant, or that an act different from that directed is substantially as good. The effect of the proceeding being to charge the property of the citizen with a burden for the public benefit, the requirements of the law as to the exercise of the power should be deemed mandatory." See also City of El Paso v. Mundy Bros., 85 Texas, 316; Connor v. City of Paris, 27 S. W. Rep., 92; Allen v. Galveston, 51 Texas, 318; Cool. on Tax., 609. The court did not err in refusing to sustain appellant's special exceptions as set out above.

The charter under which the work was ordered provides, in substance:

1. The city shall pay for one-third of the improvements, and also for all intersections.

2.  Property owners to pay for two-thirds of the improvements.

3.  Property owners to pay pro rata according to number of front feet on the street improved.

4.  Railway companies to pay for paving between rails.

5.  Council shall determine by *ordinance* that work is to be done, giving manner and extent of same.

6.  City engineer shall make immediate report of the probable cost, and give names of those owning abutting property on each side of the street.

7.  City shall advertise for bids, giving plans, specifications, and extent of improvement.

8.  Work to be let to the lowest responsible bidder.

9.  Council to levy a special tax on property fronting or abutting on the street improved pro rata according to the number of front feet.

10.  Tax (1) levied after contract let; (2) time of payment of same, and when it shall become delinquent to be specified in ordinance; (3) shall be used for *payment of such improvement;* (4) shall be a lien from the time of the levy; (5) shall be enforced as the payment of other taxes by advertisement and sale of the property; (6) if such tax not paid in full within ten days after completion of the work and such levy, collector to proceed at once to advertise and sell; provided, that the council may make the special tax delinquent, one-fourth in thirty days, one-fourth in one year, one-fourth in two years, and one-fourth in three years from date of levy.

This charter was expressly repealed by the new one adopted in 1889. Between the old charter and the new one there are these material differences:

1.  Under the old, the city to pay for all intersections and one-third of the improvement, and property owners the balance (not estimating the amount to be paid by the street railway companies).

Under the new, city pays for all grading and intersections, and owners of abutting property to pay *entire cost of all other improvements,* including entire cost of curbing (not estimating amounts to be paid for by street railway companies.)

2.́  Under old, council to determine by ordinance that the work shall be done, giving manner and extent of the same, the city engineer to make immediate report of probable cost and give names of property owners on each side of street to be improved, and the council shall then advertise for bids, giving plans, specifications, and extent of the work.

Under new charter, council to determine by resolution the street to be improved, setting out nature of improvements and material to be used; council then to advertise for bids, giving plans, specifications, and extent of work.

3.  Under old, special tax law shall be levied to pay two-thirds of cost of improvement; shall be a lien from the time of the levy, if not paid within the time prescribed in the ordinance directing the improve-

ment, or, as provided in another section, in ten days from completion of the work and such levy, the collector to proceed at once to advertise and sell the property to pay it, with discretion in the council to make the special tax delinquent—one-fourth in thirty days, one-fourth in one year, one-fourth in two years, and one-fourth in three years from the date of levy.

Under new, special tax and *cost of collecting* shall all be a lien from the time of levy, and if not paid *as provided by ordinance*, to be collected by advertisement, sale, etc.

Mr. Dillon, in his excellent work on Municipal Corporations, after an exhaustive review of all the authorities upon the subject of local assessments, questions the right of the Legislature to fix all of the expense of local improvement upon the abutting property owners, although such legislation is upheld in most of the States.  He says: "But since the period when express provisions have been made in many of the State Constitutions requiring *uniformity* and equality of *taxation*, several courts of great respectability, either by force of this requirement or in the spirit of it, and perceiving that *special benefits actually received* by each parcel of contributory property was the only principle upon which such assessments can justly rest, and that any other rule is unequal, oppressive, and arbitrary, have denied the unlimited scope of legislative discretion and power, and asserted what, upon principle, must be regarded as the just and reasonable doctrine —that the cost of a local improvement can be assessed upon particular property only to the extent that it is specially and peculiarly benefited; and since the excess beyond that is a benefit to the municipality at large, it must be borne by the general treasury." 2 Dill. Mun. Corp., 4 ed., sec. 761, p. 936, note 2, and authorities there cited; Cool. Const. Lim., 508; Seeley v. Pittsburg, 82 Pa. St., 360; Hammett v. Philadelphia, 65 Pa. St., 146; Orphan Asylum Appeal, 111 Pa. St., 135; Wistar v. Philadelphia, 111 Pa. St., 604; The State v. Newark, 37 N. J. L., 415 (18 Am. Rep., 729); New Brunswick Rubber Co. v. State Commissioners, 38 N. J. L., 190 (20 Am. Rep., 380); Barnes v. Dyer, 56 Vt., 469.

But conceding the power of the Legislature to fix the whole burden upon the abutting property (Taylor v. Boyd, 63 Texas, 541), it can not be questioned that such power must be clearly given and the mode strictly followed, or the assessment will be void.  2 Dill. Mun. Corp., sec. 769; Steckert v. East Saginaw, 22 Mich., 104; Starr v. Burlington, 45 Iowa, 87.

There is an apparent inconsistency between sections 15 and 176 of the charter under which the work was ordered and done, but it was evidently contemplated by the charter that the ordinance should prescribe the time within which the assessments should be paid, for the reason that it is provided, that the council may make such tax payable either in ten days after the completion of the work and levy of the assessment, or in four different payments.

Section 15 provides, that "said tax shall be levied after contract is let, and the time of payment of the same and the time it shall become delinquent shall be specified by ordinance."

Section 176 provides, that "if such special assessment be not paid within the time prescribed by the ordinance directing such improvement, the assessor and collector shall proceed," etc. The ordinance directing the improvement to be made wholly failed to prescribe the time of such payment.

Under the original charter it was provided, that when the city council determined by ordinance to make such improvement, it should specify the manner and extent of such improvement; that the city engineer should immediately make a report showing the probable cost, and giving the names of the owners of the property abutting on either side of such street; that the council should then advertise for bids, giving plans, specifications, and the extent of the improvement to be made; that the work should be let to the lowest responsible bidder, and *after the contract was let* the council should then levy a special tax to pay for such improvement, which should become a lien, etc.

The ordinance of the city of May 30, 1888, for such improvements, provides, "that curbing and guttering are hereby ordered and established on Ervay street, and it is hereby ordered to be graded, improved, and paved from Commerce street to the city limits; all of said improvements to be made in accordance with the plans and specifications *as the city council may adopt therefor.*" There is nothing in the ordinance indicating the manner or extent of the improvement, the nature and character of the curbing, guttering, or paving— whether to be made of wood, stone, or metal, or of what material, or in what manner the other "improvement" should be made; but these are left wholly to such plans and specifications as the city council might thereafter adopt. It does not levy any assessment to pay for the work, or make any provisions for the time of payment. The contract was let to Storey, June 28, 1888, and no special tax was levied after the contract was let to pay for such improvement, nor was any such special tax attempted to be levied until after the charter was repealed, which was more than a year after the ordinance for the improvements was passed, and about one year from the time the contract was let. When the new charter was granted, in 1889, expressly repealing the previous charter, provision was made therein that no assessments could be made, except as provided in the new charter. It is not controverted that the ordinance ordering Ervay street paved was adopted March 30, 1888; that the contract with Storey was let June 25, 1888, and makes no assessment of taxes. Storey's contract was to have been completed in October, 1888, and in fact was completed and paid for by the city before the levy of the tax under the ordinance of June 25, 1889.

Mr. Cooley, in his excellent work on Taxation, page 18, says: "The repeal of a tax law puts an end to all right to proceed to a levy of

taxes under it, even in cases already commenced, unless the right is reserved in the repealing statute, and statutory remedies for the enforcement of a tax are gone when the statute is repealed without an express saving." McQuilkin v. Doe, 8 Black., 581; Marion Township Gravel Road Co. v. Sleeth, Treasurer, 53 Ind., 35; St. Joseph Co. v. Ruckman, 57 Ind., 96; French v. The State, 53 Miss., 651.

In this case the ordinance ordering the work had been passed, the contract made, and almost, if not completely performed, when the act was repealed. At the time of such repeal, there was not only no assessment of any taxes under the act, but no steps taken by the city to make such assessment.

Under the new charter of 1889 there is no express saving of any assessment under the repeal act, because there had been no assessment. The only provision in the new act which might be construed into a saving clause is in regard to the contract, and is in the latter part of section 154, as follows: "All contracts for street improvements now outstanding shall be paid for in accordance with *this* charter, and the city council in making the assessment or levy *to pay for said improvements* shall make them under the provisions of this section."

Then, clearly no assessment of taxes could be made after the new act went into effect, except in compliance with the terms of section 154 of that act. The provision made in that section is wholly inconsistent with the provisions of the original repealed act, under which the work was done, and the burdens to be laid are more onerous. Under the last act the whole of the improvement, except grading, is to be paid for by the property owners, while only two-thirds of the improvements could be charged against them by the original act, under which the contract was made and performed.

In the case of Flewellin v. Proetzel, supra, the work had been done by a contractor under a charter of the city of Houston which required the issuance of certificates to the contractor in payment for the work, such certificates being a lien on the property abutting on the street improved. The first certificates issued were irregular, and after a new charter went into effect, the old certificates were taken up and new ones issued, under the provisions of the old law. The court said: "The provisions of the last amendment to section 23 of the city charter are so variant from the section as it existed at the time of the contract, that certificates in accordance with the new section, for work done under the old, could not be issued without materially altering the terms of the contract. * * * The certificates provided for in the new section are materially different from those provided for in the old. It is not to be presumed that the Legislature intended to repeal the old section as to existing contracts."

In this case, the charter provided for no issuance of certificates by the city to the contractor, but the charter under which the contract was made and performed provided that an assessment should be made

upon the abutting property owners to pay for two-thirds of such improvements.

Under the tax assessment as made, the abutting property owners are not only charged with the whole of the cost of paving, but an additional levy is made for the whole of the curbing, besides guttering and the cost of brick work and engineer, neither of the last three items having been set out in the original ordinance as charges against the property owners. It is manifest that the charters are wholly inconsistent, and an attempt to tax the abutting property owners, under the new charter, as though the work had been done under its provisions, when it was really done under the old charter, and according to a different rule of adjustment, which would have been less onerous. The city ordinance levying the tax is not in conformity with the original charter, the original ordinance providing for the work, or the new charter. The assessment against property owners does not follow the provisions of the old act; in fact, after its express repeal its validity was gone, except in so far as it might form the basis of a contract which was in fieri. In no event does the saving clause of the new charter have any reference to executed contracts, but it expressly refers to contracts "now outstanding," and to them only. The clause is made still more emphatic by the provision that the assessment shall be made "to pay for said improvements." The only saving clause in the new charter being a provision whereby "all contracts for street improvements *now outstanding* shall be paid," and the only assessments authorized being "to pay for said improvements." Unless this assessment comes within that clause, there is no authority for it under the act.

The sworn petition alleges, that the contract was fully performed and paid for by the city before the new charter was granted. It is admitted by appellant that the contract was fully performed and paid for by the city before the passage of the ordinance of June 25, 1889. If it was fully completed and paid for by the city before that time, then it was not necessary for any further provision to be made for its payment, and the tax must have been levied for some other purpose than to pay off an "outstanding contract." The charter contemplates that the tax, if levied, should be to raise a special fund for a special purpose, and it can only be raised to be applied to that purpose. City of Bonham v. Taylor, 81 Texas, 59.

Having made the contract for the improvement of Ervay street, and having fully paid for it out of the revenues of the city, and the contract having been fully discharged, can the city make an assessment, not for the purpose of *paying for the improvement*, but to reimburse its own general revenue fund? It is said by a learned writer, in referring to the powers of city governments: "They can not therefore tax, except for *the very purposes* allowed by law, and in the manner and under the conditions prescribed by law." Cool. on Tax., p. 348, 349; City of El Paso v. Mundy, 85 Texas, 319; Dean v. Lufkin, 54 Texas, 272.

In the case of Drake v. Phillips, 40 Illinois, 389, it was held, that where individuals have voluntarily paid money for the benefit of a town, even for a purpose for which it could raise the money by taxation, the town can not, after such payment, levy a tax for the purpose of refunding that money. This rule is especially applicable with regard to local assessments, purely for local improvements. The authorities are numerous which hold that a municipal corporation's powers to levy special local assessments must be strictly construed, every material condition precedent complied with, and the money applied only to the very purpose for which such assessment was made. Gould v. City of Paris, 68 Texas, 511; 2 Dill. Mun. Corp., 4 ed., sec. 769; City of Lowell v. Wentworth, 6 Cush., 222; Lowell v. Wheelock, 11 Cush., 391; Himmelman v. Danos, 35 Cal., 441; Hewis v. Reis, 40 Cal., 255; City of Columbus v. Storey, 35 Ind., 97; City of Chicago v. Wright, 20 Ill., 252; Steckert v. City of East Saginaw, 22 Mich., 104.

In the last named case Judge Cooley rendered the opinion, which he concluded in the following words: "We think all legislative provisions, in such cases, should be regarded as mandatory, where they seem to be adopted for the protection of the taxpayer, and may have important influence in shielding him from unequal and unjust burdens."

It is claimed by appellant's counsel, in his able and exhaustive presentation of the case, that appellees having petitioned to the city to have the work done, and having stood by and seen it done, they are estopped from denying the validity of the assessment or to pay for it. If appellees petitioned for the improvement to be made and knew that it was being done, they are not thereby estopped. It is not claimed that they petitioned to have it done otherwise than in a legal manner, or expected to be assessed otherwise than as the law then provided. These questions were fully passed upon by Judge Cooley in the case last cited above, in which he says: "The complainants do not claim that the charter under which the assessment was made is void, but they complain that its provisions have not been followed. * * * To hold that a man is bound at his peril to take notice of illegal action on the part of the public authorities, is carrying the doctrine of constructive notice very much further than the authorities will warrant. We think, on the other hand, that the citizen has the right to assume that the law is being obeyed instead of violated by the public authorities. * * * We do not find, therefore, that any principle of estoppel will preclude the complainants from the relief prayed."

It is clear that at no time during the existence of the act under which the contract was made, or during the existence of the contract itself, or during the existence of the debt created by the contract, was there ever any lien fixed upon the property of appellees for its payment. Can such a lien be created after the repeal of the act, after the full performance of the contract on both sides, and after the extinguishment of the debt? It would certainly be a strain of judicial

construction to say that such a lien can be created, under an existing charter, which provides for such an assessment only under an *outstanding contract*, and for the purpose of actual *payment* for the improvement under the outstanding contract. Sloan v. Beebe, 24 Kas., 343; Henderson v. Lambert, 14 Bush (Ky.), 24; Lowell v. Wheelock, 11 Cush. (Mass.), 391.

We find no error in the judgment of the court below, and it is affirmed.

*Affirmed.*

Delivered February 13, 1895.

Writ of error refused.