## BUSH v. CITY OF DENTON. (No. 11515.)

(Court of Civil Appeals of Texas. Fort Worth. March 13, 1926. Rehearings Denied May 1, 1926.)

1. **Municipal corporations ☞269(1).**

City of Denton under charter and Rev. St. 1911, arts. 1006–1017, has power to construct and improve streets, curbs, and gutters.

2. **Evidence ☞23(1)—Court will take judicial notice of two opposing theories as to proper method of undertaking improvements; one being that it be done by municipality, state, or government itself, and the other by letting contract to competitive bidder.**

Court will take judicial notice that there are two opposing schools of thought, one of which holds that it is in interest of taxpayer that municipality, county, state, or government construct public buildings, roads, and other improvements, and the other being that more satisfactory results are more likely to be obtained by advertising and obtaining formal contract of competitive bidder.

3. **Municipal corporations ☞445—Street improvement certificates for work done without competitive bids, held void and not merely irregular (Rev. St. 1911, arts. 1008, 1009, 1011).**

In view of charter of Denton requiring all contracts for public improvements exceeding $100 to be let on sealed competitive bids, street improvement certificates, based on work done under supervision of one appointed therefor and of mayor without competitive bids, and paid for from city's general funds *held* void, and not merely irregular, notwithstanding Rev. St. 1911, arts. 1008, 1009, and recitation of regularity under article 1011.

4. **Appeal and error ☞843(2).**

Alternative prayer, not supported by evidence upon trial nor discussed or presented in briefs on appeal, will not be considered.

Appeal from District Court, Denton County; C. R. Pearman, Judge.

Suit by City of Denton against A. A. Bush. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Hopkins & Koons, of Denton, for appellant.

F. M. Bralley, Jr., and T. B. Davis, both of Denton, for appellee.

CONNER, C. J. This is a consolidated suit prosecuted against A. A. Bush by the city of Denton, to recover some $800 upon specified improvement certificates alleged to have been issued to cover the cost assessed against him for the improvement and construction of streets, curbs, and gutters, upon which his property abutted. The trial resulted in a judgment in favor of the city, and defendant, Bush, has duly prosecuted this appeal.

Numerous assignments of error have been presented, but we will only notice such questions and recite such facts as we deem necessary to an understanding of our conclusion. It is undisputed that the city of Denton is a municipal corporation, which, prior to the institution of this suit, duly adopted the benefits of the provisions of chapter 11, tit. 22, Rev. Civil Statutes, and was also operating under a charter. Under its charter and the provisions of the chapter referred to, there is a governing body authorized to pass ordinances for the improvement of the streets in question. The character of paving, etc., was specified by ordinance, and advertisements for bids to do the work were made, but all bids received were rejected, and the city thereupon employed one J. M. Gurley, at a stated compensation, to supervise the work. Under Gurley's supervision the work proceeded for a time, when he became unable to further continue it and was released, after which the paving, construction of sewers, etc., was all done under the supervision of the mayor. All material, cost of labor, etc., both under the supervision of Gurley and the mayor, was paid by the city, after which the total cost was tabulated, and two-thirds of the cost of the street paving and the total cost of the curbing and possibly the guttering adjoining the property owned by Bush was assessed against him.

[1-3] The general power of the city to make improvements of the character under consideration is not and cannot be disputed, but appellant raises numerous objections to the proceedings below. For instance, it is complained that the ordinances preliminary to the fixing of liens and charges against the owners of abutting property were not passed by a two-thirds majority vote of the governing body, as insisted it is required by article 931, Rev. Statutes; that the ordinance specifying the character of paving, etc., to be made was not followed; that the certificates include the cost of gutters and street sewers not authorized under the statutes of the city charter, etc. But we have not found it necessary to consider or determine these questions. Section 2 of article 23 of the city's charter, which was offered in evidence, reads as follows:

"All contracts for public printing, public improvements and public works of every kind and character and the purchase of supplies for use by any department of the city, exceeding an expenditure of one hundred dollars, shall be let on sealed competitive bids, subject to the approval of the commission."

It is a matter of public knowledge, of which we may take judicial notice, that there are two opposing schools of thought relating to the subject treated by the section of the charter quoted. One is that it is preferable and in the interest of the taxpayer for the municipality, the county, state, or government to undertake and construct public buildings, roads, and other improvements of the kind, and thus secure them for the benefit of the general public at actual cost, excluding all profits.

The opposing theory is that the ordinary governing body to-day is politically composed of persons subject to political influence, who are unskilled, without technical or experimental knowledge of the best methods, material, etc., calculated to avoid mistakes, insure durability at reasonable cost, and hence that more satisfactory results are more likely to be obtained by advertising for and obtaining a formal contract of a competitive bidder, of whom security can be required for the faithful and efficient completion of the public improvement. It is of course not the function of this court to determine which school of thought has the better of the argument, for it is undisputed that the voters of the city of Denton, in defining the powers of its governing body, saw fit, by the section of the charter cited, to require competitive bids for public improvements, etc., not exceeding an expenditure of $100. This special provision of the city's charter apparently at least operates as a limitation of the more general powers of the city to improve its streets, etc., to be found in its charter and articles of the statutes, and it has been, as we think, well said in section 495, of Page and Jones on Taxation by Assessment, that "such provisions are intended to protect the property owners, and are mandatory," citing Flickinger v. Fay, 119 Cal. 590, 51 P. 855; Siegel v. City of Chicago, 223 Ill. 428, 79 N. E. 280, 7 Ann. Cas. 104, and other cases, including the case of City of Dallas v. Ellison, 10 Tex. Civ. App. 28, 30 S. W. 1128, hereinafter more particularly noticed.

It is undisputed in the record that no contract with a competitive bidder was ever made with the city of Denton for the paving, construction of curbing, etc. On the contrary, under the authority, and at a cost of the city largely in excess of $100, the entire improvements were constructed. It is further undisputed in the record that the money appropriated by the city for the paving improvements was out of the city's general street construction and repair fund, in which there had been placed the proceeds of a general bond issue for $100,000, voted by the city for general street construction and improvement purposes, and the question is whether under such circumstances the street improvement certificates declared upon constitute valid instruments which would support a judgment against appellant and constitute a lien upon his property described in the petition. We think not.

Article 1008, of chapter 11, tit. 22, Rev. Statutes, gives power to a city to order the improvements of any highway therein, or part thereof, and to select the materials and methods for such improvement, and to contract for the construction of such improvements in the name of the city, and to provide for the payment of the cost of such improvements out of any available funds of the city, or as therein provided.

The next article, 1009, provides that the cost of making such improvements may be wholly paid by the city, or partly by the city and partly by the owners of property abutting thereon. In the present instance, as stated, the city saw proper to construct the improvements itself and saw proper to pay for those improvements out of the moneys on hand not otherwise appropriated, and it is undisputed that after this was all done the certificates in question were issued; that they were written and signed and left in the archives of the city; that they were not delivered to any person as an obligation; that they were not assigned to any one, nor were they hypothecated to secure the money needed in the improvements, but merely written and retained by the city. In the city's petition it is alleged that the moneys paid were paid as an "advancement" to the appellant. It is not alleged that appellant requested such advancement or agreed to repay the sums so advanced. In brief, the advance payments appeared to have been purely voluntary, and we know of no rule of law which under such circumstances will constitute the certificates declared upon as valid obligations, authorizing the imposition of debt and the establishment of a lien upon appellant's property.

In the case of City of Dallas v. Ellison, 10 Tex. Civ. App. 28, 30 S. W. 1128, it was held, among other things, that assessment certificates, issued after a contract for the improvement of Ervay street in the city of Dallas had been executed and fully paid for out of the revenues of the city, were not valid. The court said:

"Can the city make an assessment, not for the purpose of paying for the improvement, but to reimburse its own general revenue fund? It is said by a learned writer, in referring to the powers of city governments: 'They cannot, therefore, tax, except for the very purposes allowed by law, and in the manner and under the conditions prescribed by law' "—citing cases.

The court further cites with approval the case of Drake v. Phillips, 40 Ill. 389, where it was held that, where individuals have voluntarily paid money for the benefit of a town, even for a purpose for which it could raise the money by taxation, the town cannot, after such payment, levy a tax for the purpose of refunding that money. The court further said:

"The authorities are numerous which hold that a municipal corporation's powers to levy

special local assessments must be strictly construed, every material condition precedent complied with, and the money applied only to the very purpose for which such assessment was made"—citing numerous cases.

A writ of error was denied in this case.

In the case of Alford v. City of Dallas (Tex. Civ. App.) 35 S. W. 816, it was held, quoting from the headnote:

"An assessment for a municipal improvement cannot be made after the city has paid for the completed work out of its general fund. An agreement in a petition for street improvements that the signers would pay their 'pro rata share as provided in the charter' will not estop such signers from setting up the invalidity of the assessment for the work because of noncompliance with the charter."

This case is cited with approval in the later case of Celaya v. City of Brownsville (Tex. Civ. App.) 203 S. W. 153, where it was held, again quoting from the headnote:

"Where all the improvements for which paving certificates were issued had been paid by the city with proceeds from bonds voted and issued therefor, the certificates were not legally issued, and never became valid obligations against the property owners."

A writ of error was likewise refused by the Supreme Court in this case.

We have been unable to distinguish the case we have under consideration from the principles announced in the cases cited. As already stated, it is undisputed that the improvements made by the city of Denton upon the streets specified in its petition were not made by competitive bidders; they were fully paid for out of funds of the city provided for the improvement of streets generally, and thus left to the discretion of the governing body to expend for street improvements upon any street or streets the board might deem advisable, after which, as is also undisputed, the certificates in question were issued for the purpose of reimbursing the city to the extent of the amounts specified in the certificates. In behalf of appellee, much reliance seems to be made upon that part of article 1011, of chapter 11, tit. 22, Rev. Statutes, which provides that, where such certificates—

"shall recite that the proceedings with reference to making such improvements have been regularly had in compliance with law, and that all prerequisites to the fixing of the assessment lien against the property described in said certificate, and the personal liability, shall be prima facie evidence of the facts so recited, and no further proof thereof shall be required in any court."

The certificates under consideration indeed contain such recitals, but we do not think they can be given the effect contended for, whereas, in the case here, it affirmatively appears that the certificates are not merely irregular but void.

[4] There is a further prayer in the petition that, in the event the court shall be unable to support the judgment prayed for on the certificates, then the city may recover the reasonable value of the improvements made to the extent at least of the benefit conferred upon appellee's property. It may be doubted, in view of the absence of any agreement on appellant's part, and in view of the voluntary character of the city's payment, that such recovery in any event would be authorized. But the question has not been discussed or presented in the briefs of counsel, and no evidence upon the trial was offered tending to show the reasonable value of the work done upon the streets, curbs, guttering, etc., adjoining appellant's property, or the extent to which such improvements benefited the same. We accordingly will not discuss or determine the city's right, if any, in this particular, nor, as before indicated, do we deem it material to determine the numerous questions presented in the briefs of counsel other than the question already discussed and determined by us.

For the reasons assigned, it is ordered that the judgment below be reversed and the cause remanded.