CELAYA et al. v. CITY OF BROWNSVILLE.
(No. 5907.)

(Court of Civil Appeals of Texas. San Antonio. March 27, 1918. Rehearing Denied May 1, 1918.)

1. APPEAL AND ERROR ⊙�eq1122(4)—ADOPTING UNDISPUTED STATEMENT OF FACTS.

As statement of undisputed facts made by counsel for appellant is unchallenged, and the facts therein stated are in accord with the record, the court on appeal may adopt the statement as its finding of fact.

2. MUNICIPAL CORPORATIONS ⊙�eq409—STREET IMPROVEMENTS—ASSESSMENT OF BENEFITS—REIMBURSEMENT OF CITY.

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 1006–1017, empowering city to procure three-fourths of the cost of paving from abutting property owners and procure costs of paving that portion of street occupied by railway or street railway tracks from the companies and to procure the balance of the cost, if any, by other means, a city cannot assess property owners for benefits to reimburse the city for funds derived from the sale of bonds voted by the taxpayers for paving streets and expended by the city in paying for improvements made on such streets.

3. MUNICIPAL CORPORATIONS ⊙⟇428—STREET IMPROVEMENTS—SPECIAL ASSESSMENTS.

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 1008–1017, relating to street improvements, a city is not authorized to assess bene-

fits and levy special paving tax against the owners of property in one district for purpose of paying the paving contractor for paving streets in another district.

4. MUNICIPAL CORPORATIONS ☞449(2) — STREET IMPROVEMENTS — SPECIAL TAX— "TAX."

Cities incorporated under Vernon's Sayles' Ann. Civ. St. 1914, arts. 1006–1017, cannot levy a special tax for local improvements evidenced by paving certificates unless the ordinance levying the tax be consented to by two-thirds of the aldermen elected; the words "no tax," as used in article 931, providing that no tax shall be levied unless by consent of two-thirds of aldermen elected, not being limited to tax for general revenue.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Tax.]

5. MUNICIPAL CORPORATIONS ☞898 — PAVING CERTIFICATES—VALIDITY.

Where all the improvements for which paving certificates were issued had been paid by the city with proceeds from bonds voted and issued therefor, the certificates were not legally issued, and never became valid obligations against the property owners.

6. APPEAL AND ERROR ☞265(1)—TIMELY EXCEPTIONS AND OBJECTIONS.

Where no exception was taken to findings and no request made for additional findings, the assignment complaining of findings will be overruled in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1989, providing that judge shall at the request of either of the parties state in writing the facts found by him separately from the conclusions of law, which conclusion shall be filed with the clerk and constitute part of the record.

Appeal from District Court, Cameron County; W. B. Hopkins, Judge.

Consolidated suits between Augustine Celaya and others and the City of Brownsville. From the judgment rendered, certain of the former appeal. Reversed.

Harbert Davenport and Joseph K. Wells, both of Brownsville, for appellants. Graham, Jones & George, of Brownsville, for appellee.

SWEARINGEN, J. This is an appeal from a judgment decreeing personal liability on paving certificates in favor of the city of Brownsville, appellee, against the following appellants: Mrs. H. M. King, James B. Wells, Daniel Yturria, as independent executor of the estate of F. Yturria, deceased, G. Rendall, Ysabel Garcia, M. A. Garcia, Mrs. F. Yturria, William Kelly, as independent executor of the estate of Robert Dalzell, deceased, Mrs. I. L. Cowen, L. B. Puente, J. A. Maltby, H. A. Maltby, Pablo Fernandez, Manuel Fernandez, Jose Fernandez, Aug. Celaya, Mrs. M. E. Vivier, P. J. Vivier, A. Bollack, Mrs. V. Fernandez, H. J. Wallis, Maggie I. Wallis, Jose Celaya, Juana Ch. Fernandez, M. M. Waltzenbach, J. Wormser, B. G. Stegman, Merchants' National Bank, Mrs. M. Fernandez, Basilio Garcia, M. Besteiro, Mrs. F. Fernandez, A. P. Barreda, C. P. Barreda, and W. H. Mason.

The judgment foreclosed liens against specific property belonging to all the above appellants except Mrs. M. Waltzenbach, Mrs. I. L. Cowen, Mrs. V. Fernandez and James B. Wells. The cause was tried before the court without a jury.

On January 11, 1913, a number of the above-named appellants filed an original petition in suit No. 2415 against the appellee for the purpose, among others, of having the paving certificates against them and their property canceled.

On October 27, 1913, the city of Brownsville filed original petitions in independent suits against each of appellants who at that time were plaintiffs in the suit No. 2415.

On April 8, 1914, appellants filed their first amended original petition in cause No. 2415.

On November 20, 1916, the city of Brownsville filed its first amended original answer in said cause No. 2415.

On June 6, 1916, the court upon agreement of all parties entered an order consolidating all the pending suits involving the paving certificates with suit No. 2415 and ordered the consolidated suits to be carried upon the docket of the district court under the style of "Augustine Celaya et al. v. The City of Brownsville et al.," and numbered 2415.

On November 20, 1916, appellants filed their first supplemental petition in the consolidated cause No. 2415. On the same day, November 20, 1916, an original answer was filed in cause No. 2415 for such of the before-named appellants as had not appeared in any of the pleadings previously filed. On the same day, November 20, 1916, the city of Brownsville filed the first supplemental answer in cause No. 2415. The issues alleged by the city of Brownsville were: That it was a municipal corporation organized under the general laws of the state of Texas as a city of less than 10,000 inhabitants; that on August 2, 1910, in accordance with a majority vote, the qualified voters of the city accepted and adopted the power of assessing abutting property and the owners thereof, and street car companies and railroad companies and their property, for benefits received from street paving, as authorized by and contained in chapter 11, tit. 22, of the Revised Civil Statutes of 1911, which chapter thereupon became a part of the charter of the city of Brownsville; that on February 6, 1911, the city council of the city of Brownsville declared a necessity for the issuance and sale of bonds in an amount not to exceed $80,000, for the purpose of raising funds with which to pay the city's portion of the expense of paving certain streets in a defined territory embraced in what was later designated as paving districts Nos. 1, 2, and 3. On the same day, February 6, 1911, the city, by ordinance, ordered the bond election. The election was held March 14, 1911, as ordered, and resulted in favor of the issuance of the bonds as shown by canvass of returns by the city coun-

cil on March 20, 1911, when the council thereafter, on the same day, declared the result of the election in favor of the issuance of bonds.

On March 27, 1911, the city council passed a general street paving ordinance describing the form of bonds and interest coupons, fixing the amount and numbers of said bonds and providing that a tax be levied for interest and sinking fund as required by law (article 846).

On June 5, 1911, an ordinance was passed levying a tax for the year 1911 and succeeding years looking to the payment of interest and creating a sinking fund for the payment of the bonds.

On August 28, 1911, the city council entered into a written contract with the Creosoted Wood Block Paving Company for the construction of 23,650 square yards of paving within the territory for the pavement of which the bonds were authorized on March 27, 1911.

Thereafter, on October 23, 1911, the city council passed an ordinance making provision for apportionment of assessments against owners of property along and on the streets where the paving might thereafter be constructed in accordance with the contract executed August 28, 1911, and in accordance with the general paving ordinance of March 27, 1911.

On March 11, 1912, the city council by ordinance created paving district No. 1, which contained the 23,650 square yards described in the executed contract, and in the same ordinance designated the style of pavement and apportioned the expense of the improvements between the city, the abutting property owners, and railways and street railways owning franchises on said streets.

Thereafter, on April 29, 1912, an ordinance was passed further providing for paving district No. 1 and apportioning the expense thereof.

On May 27, 1912, the city council directed that notices be given to all owners of abutting property to appear before the city council on June 17, 1912, to make known any objections they might desire to urge against the assessment of benefits against them.

On June 17, 1912, in pursuance of the notices issued, the city council met in regular session, and gave a hearing to all the owners of the abutting property, to be assessed for benefits received in district No. 1, containing the 23,650 square yards described in the paving contract, and after said hearing of objections by said property owners the council passed an ordinance apportioning the expense of the said improvements in district No. 1.

On October 3, 1912, the city council created paving district No. 2, which embraced a portion of the territory contained in the area designated in the first general street paving ordinance of March 27, 1911. This ordinance also made provision for the mode and manner of paving and for the apportionment of the expense of the improvement.

On November 7, 1912, the city council by ordinance corrected certain mistakes and irregularities incident to any paving undertaken, and also created paving district No. 3, which included a portion of the territory designated in the general street paving ordinance of March 27, 1911. The said ordinance passed November 7, 1912, also made further provision for paving districts Nos. 1 and 2, including material and apportionment of the expense.

On November 11, 1912, the city council by ordinance amended section 7 of the street paving ordinance of October 23, 1911, and at the same meeting, acting under the apprehension that some irregularities might have existed as to the paving of district No. 1, and to provide more fully for the contemplated improvements in said districts Nos. 2 and 3, a reassessment as to districts Nos. 1, 2, and 3, was declared, and due and legal notices ordered, published, and personal notices given in all respects as provided by said ordinance and said chapter 11 of a hearing for the benefit of all concerned in the improvements done and to be done in said paving districts Nos. 1, 2, and 3, said hearing to be had on December 14, 1912; and at the same meeting a resolution or ordinance was duly and legally passed adopting a form of assessment certificates as to said paving district No. 1 which is itself in all things in accordance with the contract for paving said district and the laws of the state, the ordinance referring to the matter and the provisions of said chapter No. 11; and in said ordinance or resolution the mayor and city secretary were authorized and directed to issue said certificates.

In pursuance of the notices ordered published and sent as ordered in the meeting of the city council of date November 11, 1912, said notices as to the paving done and to be done as to paving districts Nos. 1, 2, and 3 were in all things fully complied with as required by said ordinance or resolution and as required by said chapter No. 11, and for the length of time as required by said ordinance and said chapter 11; and thereafter, on December 14, 1912, at a meeting of the city council duly and legally held, a hearing of all persons and corporations interested, as a result of the paving done and to be done in said paving districts Nos. 1, 2 and 3, in all respects as provided by law and the ordinances of said city of Brownsville bearing on said question, and as required by said chapter 11, was afforded, at which time and meeting the attorneys for a portion of the plaintiffs and a portion of the defendants herein appeared and announced that they desired a postponement or continuance of said hearing to December 18, 1912, which request was by the said city council granted, and a recess was ordered taken to December 18,

1912, for the purpose of hearing such complaints, if any, as said plaintiffs and said defendants might desire to make; that on December 18, 1912, said city council, again being duly and legally in session, again offered to hear and determine such complaints, if any, as said plaintiffs and said defendants desired to make, when again said plaintiffs and said defendants, acting by and through their attorneys, who now appear of record for them in this cause, requested a further postponement until December 20, 1912, which request was again granted by said city council; that on December 20th, which again being duly and legally in session for that purpose, again offered to hear and determine such complaints, if any, as said plaintiffs and said defendants saw fit to make, when and at which meeting said plaintiffs and said defendants, acting by and through ·the attorneys who now appear of record for them, and each of them, in this cause, informed said city council that, while the most of the said plaintiffs and said defendants did not intend to acquiesce in the proceedings that said council had had referring to the paving of said districts Nos. 1, 2, and 3, and the assessments against them, the said plaintiffs and said defendants, none of them, desired to offer or introduce any evidence before the council on the matter, but would take such steps as they felt their interest required in and before the proper court or courts; whereupon, and at said meeting on December 20, 1912, said city council, by vote in open meeting, declared the hearing closed as to said plaintiffs and said defendants, and proceeded to assess and apportion the expense for paving and improving said districts Nos. 1, 2, and 3, as per the reports of the city engineer, which have been embodied in said notices for the hearing of December 14, 1912, and being a resolution or ordinance duly and legally passed at a meeting duly and legally held December 23, 1912, ratifying and confirming what had already been done in open council meeting on December 20, 1912.

It was further alleged by the city of Brownsville that as a result of all the foregoing ordinances and contract and to secure the moneys therein specified the city of Brownsville did on the 31st day of December, 1912, and on the 21st day of March, 1913, cause to be executed and signed by its mayor and attested by its secretary all the certificates with coupons attached, herein sued upon. And the city further alleged that it was the owner of all the certificates sued upon; that the certificates were past due and unpaid. The exact amount due by each of the appellants was alleged. The city prayed for judgment against each of the appellants and for foreclosure of the special paving assessment liens.

The appellants generally and specially excepted to the sufficiency of the allegations made by the city of Brownsville.

The appellants in their pleadings admitted the passage of all the ordinances or resolutions set out in the pleadings of the city of Brownsville, but answered that the $80,-000 bonds authorized by the qualified voters of the city of Brownsville was sufficient to pay for all the streets within the boundaries of paving districts Nos. 1, 2, and 3, answered that when the paving contract was executed with the paving company no provision was made for assessing any portion of the cost of the paving against the owners of the property abutting on said streets, and further answered that prior to December 23, 1912, the paving contractor finished paving the streets, and were paid in full for the work by the city out of the proceeds of the $80,000 bonds issued for that purpose or out of other funds of the city of Brownsville; that on that date, December 23, 1912, the city council passed the ordinance imposing the tax represented by the certificates sued upon, and alleged that this ordinance was not passed by the two-thirds of the aldermen elected as members of the city council, and was therefore void; that the paving certificates have never been issued, but are being held by the city; that the proceeds of the certificates, if sold, could not be paid for the improvement to appellant's property, because that had all been paid for before December 23, 1912, and that the proceeds would be diverted to other purposes. It was further alleged that the extended contract for paving of the additional 17,500 feet which was in paving district No. 2 was void, among other reasons, because by its terms the contractors were to receive in payment for work in district No. 2 the paving certificates against the owners of property in district No. 1, and because the said certificates were by said agreement to be discounted ten per cent. of their par value.

Other issues were made by the pleadings, but have been waived.

[1] As the statement of undisputed facts made by counsel for appellants is unchallenged by appellee, and the facts therein stated are in accord with the record, we adopt the statement as our findings of fact:

"(1) The city of Brownsville, for all purposes of this suit, was and is a municipal corporation, duly incorporated under the general laws of this state providing for the incorporation of cities of less than 10,000 inhabitants.

"(2) By an election duly and legally held on August 2, 1910, the city of Brownsville adopted, as part of its charter, the provisions of chapter 11, tit. 22, Revised Civil Statutes of Texas.

"(3) At an election duly and legally held on March 14, 1911, the qualified voters of the city of Brownsville authorized the city council of the city of Brownsville to issue bonds of said city in any amount not to exceed $80,000, 'for the purpose of improvement and pavement of Elizabeth street from Fourteenth street to and across Tenth street, and Tenth, Eleventh, Twelfth, and Thirteenth streets between Levee street and Washington street, to the extent and as far as the amount of said bonds can or will pay for the improvement and pavement of

said street, and the balance remaining, if any, after paying for the improvement and pavement of other streets of the city of Brownsville, Tex., to be determined upon by the city council.'

"(4) In pursuance of the authority so granted, the city council of the city of Brownsville did forthwith issue street paving bonds of the city of Brownsville of the par value of $80,000, for the purposes specified in the preceding paragraph, sold the same for the par value thereof, and deposited the proceeds in, the city treasury, all on or before August 28, 1911.

"(5) On August 28, 1911, the city council of the city of Brownsville entered into a written contract with the Creosoted Wood Block Paving Company for the construction of 23,650 square yards of paving, within the identical area within the city of Brownsville for the pavement and improvement of which said bonds were authorized and issued. The contract provided that the contractor should also construct, under the same terms, conditions, and stipulations, any additional pavement authorized and provided for by said city council while the said 23,650 yards expressly contracted for was in course of construction.

"(6) The 23,650 square yards of pavement provided for by the contract of August 28, 1911, was constructed by the Creosoted Wood Block Paving Company within the area designated in conformity with the terms of said contract, and it was accepted by the city of Brownsville, and paid for by it out of the proceeds of said bond issue. The final estimate was approved and so paid by the city council of said city on July 1, 1912.

"(7) On October 23, 1911, the city council of the city of Brownsville adopted an ordinance 'providing for the manner of determining, after notice, and by due process of law, the amount of special benefits to lots or parcels of abutting property, and to railroads and street railroads and to the owners thereof, upon any streets ordered to be paved in the city of Brownsville, and to provide for the assessment of the cost of such improvements, or of a part thereof, against such owners and their property, and for the collection and improvement thereof.' This was the first ordinance adopted by the city council to enable the city to exercise the charter powers derived from the adoption of the provisions of chapter 11, tit. 22, Revised Civil Statutes, by the qualified voters of the city of Brownsville at the election of August 2, 1910. This ordinance provided detailed procedure for making of assessments, including notice to property owners by publication of copy of resolution of city council prescribing the time and place of hearing as to benefits, etc., in some newspaper in the city of Brownsville, once in each week for four successive weeks, and by mailing a copy of such resolution, duly authenticated, to each property owner at his last-known address. On March 18, 1912, the city council of the city of Brownsville, by a vote of seven 'Ayes' and no 'Nays,' adopted an ordinance creating 'paving district No. 1,' including the identical area described in the ordinance providing for the issuance of bonds, as stated in paragraphs 2 and 3 above, and the identical area then being paved under and by virtue of the contract of August 28, 1911, which contract was, by said ordinance creating 'paving district No. 1,' expressly approved and confirmed. Said ordinance further ordered that one-third of the cost of said paving should be assessed against the abutting property (on either side of the street) and the owners thereof.

"(9) On April 29, 1912, the city council of the city of Brownsville passed an ordinance providing: 'There shall be levied and assessed against all lots and fractional lots and the owners thereof, lying, and being on each side of Washington, Elizabeth and Levee streets, in said paving district No. 1, as above men-tioned, the sum of four dollars and nine cents ($4.09) per front foot on each and every foot of ground fronting on any of said streets. There shall also be levied and assessed on all lots and fractional lots, and the owners thereof, fronting on side streets numbers ten (10), eleven (11), twelve (12), and thirteen (13) within said paving district No. 1 the sum of two dollars and eighty-seven cents ($2.87) per front foot for each foot of lot or fractional part of lot fronting on each and all of said side streets.' This ordinance further provided that the city tax collector should enter each of said assessments in a book to be kept by him, and proceed to collect same, in installments provided for by said ordinance as same fell due. This ordinance further provided that the city tax collector should 'give notice to the owner, his agent and attorney, of a day set for hearing for each owner, as provided by law, by advertisement at least three times in the official organ of the city of Brownsville, same to be a newspaper published in said city, the first publication thereof to be made at least ten days before the day set for such hearing, and in addition thereto he shall issue personal notices to the owners of such property, their agents or attorneys, for at least ten days before the date of such hearing by placing same in the postoffice at Brownsville, Texas, properly addressed to such owner, his agent or attorney, at their last known address, notifying him of the date for such hearing, and after the expiration of said period of notice and hearing said collector shall levy upon any property in said Paving District Number One, on which assessments and interest have not been paid, as will be sufficient to pay the same.' This ordinance also expressly repealed 'all ordinances and parts of ordinances in conflict therewith.'

"(10) On May 27, 1912, the city council of the city of Brownsville directed the city attorney to publish a notice in the official organ of the city to property owners living in paving district No. One (1) to come and appear before the city council on the 17th day of June, 1912, at 10 a. m. to show cause, should any they have, why their property abutting on the streets of said paving district should not be assessed one-third of cost of paving said district.

"(11) On June 17, 1912, the city council of the city of Brownsville, after reciting publication of notice of hearing 'to the owners of property in paving district No. 1 of said city, citing the owners of property to appear before said meeting for the purpose of raising such objection as they might have to the assessment against them and their said property of a share of the cost of such paving,' in three consecutive issues of the Brownsville Weekly Herald, the official organ of the city of Brownsville, on the 1st, 8th and 15th days of June, respectively, and after reciting that the city secretary had on the 4th day of June, 1912, 'executed and mailed to each of the owners of property abutting on said paving district, at his last-known address,' a copy of the published notice, adopted a resolution which purported to assess against various persons named in said resolution, including all of appellants who are property owners on the streets abutting on said paving district No. 1, an amount equal to $4.09 per front foot of property abutting on Levee, Elizabeth and Washington streets, and $2.87 per front foot of property abutting on Tenth, Eleventh, Twelfth, and Thirteenth streets.

"(12) On August 20, 1912, the city council of the city of Brownsville adopted a resolution extending the contract of August 28, 1911, between said city and the Creosoted Wood Block Paving Company to provide for 17,500 additional square yards of paving: Provided that said Creosoted Wood Block Paving Company 'shall accept as payment for such additional pavement paving certificates of paving district

No. 1 of said city, at the rate of 90 per cent. of their full face value, for each estimate of work done.'

"(13) On October 3, 1912, the city council of the city of Brownsville by a record vote of three to two (seven members shown to be present) adopted an ordinance creating paving district No. 2 of the city of Brownsville, and ordering it paved with creosoted wood blocks in conformity with the resolution of the city council of the city of Brownsville of date August 20, 1912, extending the contract of August 28, 1911, and ordered that one-third of the cost of said paving be assessed against abutting property and the owners thereof.

"(14) November 7, 1912, the city council of the city of Brownsville adopted an ordinance changing the boundaries of paving district No. 2, as created by the ordinance of October 3, 1912, dividing same into 'paving district No. 2' and 'paving district No. 3.'

"(15) On November 7, 1912, the city council of the city of Brownsville passed an ordinance providing a mode of procedure for 'reassessments' to cure mistakes, irregularities, or errors in any proceedings with reference to any improvement undertaken or made under the provisions of chapter 11, tit. 22, Revised Statutes of Texas.

"(16) On November 11, 1912, the city council of the city of Brownsville adopted an amendment to section 7 of the general paving ordinance of October 23, 1911, and ordered notices to issue to all abutting property owners in paving districts Nos. 1, 2, and 3 to appear before said council on December 14, 1912, for the purpose of presenting protests against assessments to be made against property abutting on streets in said districts.

"(17) Notices of said meeting of the city council were published as prescribed by the ordinances of the city of Brownsville. At the meeting of said council on December 14, 1912, several property owners, including most of the appellants, appeared to contest said assessments, and requested a postponement of the hearing until December 18, 1912, whereupon the council declared the hearing closed as to all property owners except those who had asked for postponement of hearing and adjourned to December 18, 1912.

"(18) On December 18, 1912, the city council of the city of Brownsville, without action adjourned until December 20, 1912, and on December 20, 1912, said council, by a record vote of three 'Ayes' and no 'Nays,' five members of the council being present, declared the hearing closed. No evidence was offered by any of the parties at either of said meetings of the council held on the 14th, 18th, and 20th days of December.

"(19) On December 23, 1912, by a record vote of four aldermen to two (one alderman present, and not voting), the city council of the city of Brownsville adopted three separate ordinances identical in form, relating, respectively, to the assessments against the abutting property owners in paving districts Nos. 1, 2, and 3. These ordinances each recite that the assessments are made in compliance with the provisions of the general paving ordinance of October 23, 1911, and recite facts sufficient to show such compliance. These ordinances assessed against each property owner in said paving districts the amount per abutting front foot, shown by the engineer's report to be one-third of the average cost per lineal foot of constructing such paving, under the terms of the contract of August 28, 1911, between the city of Brownsville and Creosoted Wood Block Paving Company ($4.09 per front foot on Elizabeth and parallel streets, $2.87 per front foot on the numbered cross streets, and proportionately for market square), declared the amount of each assessment to be a personal liability of the owner of the abutting property, and declared that each such as-

sessment should constitute a valid first lien upon such tract or lot of land superior to all other liens and claims except state, county, and municipal taxes.

"(20) The assessment ordinances of December 23, 1912, further provided that each assessment should be evidenced by negotiable certificates against the assessed property owners, drawn payable to the city of Brownsville, or its order bearing interest at 6 per cent. per annum from January 1, 1913, until paid, and providing for the payment of 10 per cent. addition as attorney's fees, in the event such certificates be not paid at maturity and placed in the hands of an attorney for collection.

"(21) In pursuance of said ordinances of December 23, 1912, mayor and city secretary of the city of Brownsville, on or about December 31, 1912, executed paving certificates against each abutting property owner (including each of appellants) in said three paving districts declaring said property owners to be indebted to the city of Brownsville in the amount of said assessment. Said paving certificates recite that same are executed by virtue of the ordinance and assessment of December 23, 1912, and declare the amount of the assessment, together with interest and attorney's fees, to be a first and paramount lien upon the property described in said certificate. The certificates issued against property owners in paving district No. 1 recite that the paving for which the assessment was made had been completed and accepted by the city council July 1, 1912. The assessments are also declared by the certificates to be a personal liability of the owner of the property.

"(22) The said paving certificates against appellants were never 'issued' in the sense of being delivered by the city of Brownsville to any person, but were retained by the officers of said city, and are sued on in this case by said city of Brownsville.

"(23) At the time of the execution of said certificates (on or about December 31, 1912) the paving in paving district No. 2, had not been completed, accepted, or paid for by the city of Brownsville. Thereafter, on January 6, 1913, a portion of said paving in paving district No. 2 was accepted by the city council as completed. On May 13, 1912, after the institution of this suit, the contract between the city of Brownsville and the Creosoted Wood Block Paving Company for the construction of paving in paving districts Nos. 2 and 3 was canceled, and an agreed settlement was had between said city and said Creosoted Wood Block Paving Company as to payment for the completed portion of said paving, and the amount of the payment so agreed upon has since been made by said city to said Creosoted Wood Block Company."

The first assignment contends that the court erred in rendering judgment against the appellants, and in support thereof six propositions are submitted which seem to us to very clearly and correctly dispose of the question presented by the assignment. The first of these propositions is:

"The city council of the city of Brownsville was wholly without authority to levy an assessment against the owners of property abutting on streets within paving district No. 1 of the city of Brownsville, to be used, not to pay for the pavement and improvement of said streets, but to reimburse said city for one-third of the cost of pavement and improvement of said streets, already completed, accepted by said city, and paid for by it, out of a fund lawfully provided for that purpose."

It was alleged by the city of Brownsville that the proceeds from the $80,000 bonds was to be used for the payment of the por-

tion of the improvements that was not assessed against the owners of the abutting property, the railway company and the street railway company. The benefits assessed against the owners of the abutting property in paving districts Nos. 1 and 2 was the equivalent of two-thirds of the entire cost for the improvements directly in front of the property benefited. The street railway company's benefit was assessed at the cost of paving that portion of the street on which its tracks were placed for a width of nine feet. The balance of the cost of the improvements in said districts 1 and 2 was to be borne by the city. Neither the evidence nor the pleadings clearly show the actual amount left for the city to pay out of funds procured by the bonds.

[2] Under the law expressed in chapter 11, tit. 22, of Vernon's Sayles' Texas Civil Statutes, the city was empowered to procure three-fourths of the cost of the paving from abutting property owners, and was authorized to procure the costs of paving that portion of the street occupied by railway or street railway tracks from the said companies, provided after a fair hearing it was found that the benefits were at least equal to the assessment; and the city was by the same law authorized to procure the balance of the cost, if any, by other means.

The ordinance of December 23, 1912, was the one by which the city imposed the assessment tax for benefits against these appellants. At that time all the improvements in districts Nos. 1 and 2 had been paid for in full by the city. It therefore appears that the funds sought to be procured by assessing benefits was not to be raised for the purpose of paying for the improvements for which the assessment was made. We believe it is well settled that the only purpose for which benefits can be assessed under chapter 11, tit. 22, is the sole purpose of paying for the improvements that created the benefit. City of Austin v. Nalle, 102 Tex. 536, 120 S. W. 996. As these improvements had all been paid for by the city before the assessment, the only purpose of the assessment of benefits was to reimburse the city for funds derived from the sale of the bonds voted by the taxpayers for paving these streets and expended by it in payment for the improvements made. The law did not authorize the assessment for the purpose of reimbursement to the city of the expenditure of the bond money. City of Dallas v. Ellison, 10 Tex. Civ. App. 28, 30 S. W. 1128; Alford v. City of Dallas, 35 S. W. 819; City of Sherman v. Williams, 84 Tex. 421, 19 S. W. 606, 31 Am. St. Rep. 66.

[3] From the terms of the extension contract made August 20, 1912, it is evident that the city assessed the benefit and levied the special paving tax against the owners of property in district No. 1 on December 23, 1912, for the purpose of paying the paving contractor for paving streets in district No. 2. This the city was not authorized by the statute to do. Vernon's Sayles' R. C. S. arts. 1008 to 1017; City of Sherman v. Williams, 84 Tex. 421, 19 S. W. 606, 31 Am. St. Rep. 606; Moore v. Coffman, 189 S. W. 94.

Appellee for answer to the foregoing propositions relies upon the conclusion expressed in its brief on page 8:

"That it was the purpose of the Legislature to permit the city to compel the benefited owner to pay in part what it had cost the city to make the improvement."

We think not. The statute only authorizes the city to compel the benefited owner to pay the assessed value of his benefit for the improvement itself, but does not authorize the city to procure funds with which to pay for paving streets in front of the property of other owners, located in another paving district.

[4] The second proposition under the first assignment is:

"The city ordinances of the city of Brownsville of December 23, 1912, which purport to make the assessments against appellants and their property, and to authorize the issuance of the certificates sued on by appellee, are wholly inoperative and void, and of no force and effect, for the reason that same were not adopted by vote of two-thirds of all the aldermen elected to said council, as is required by law to pass any ordinance or resolution which levies a tax."

The ordinance of December 23, 1912, is the act which levied the special assessment tax for local improvements evidenced by the paving certificates later executed, made the basis of this suit. By the terms of the statute the mayor and eight aldermen constituted the full board, nine members in all. Vernon's Sayles' Rev. Tex. Civ. St. § 784; 2 Dillon, Mun. Corp. (5th Ed.) § 513, p. 837, note 2. The city council can transact the city's business generally with a quorum, which is, for such purposes, a majority of the members elected; but in order to impose a tax the quorum required is two-thirds of the full board, which is six members. Rev. Tex. Civ. St. § 784. In order for the city council to levy a tax, the ordinance making the levy must be passed by two-thirds of the aldermen elected. Rev. Tex. Civ. St. art. 931. The ordinance of December 23, 1912, which levied the tax herein contested, received the votes of only four aldermen. Four is not two-thirds of eight; therefore the levy was not valid.

Appellee very plausibly insists that article 931, supra, relates only to taxation for general revenue, and does not apply to the tax for special assessments for local improvements, which is merely the assessment of benefits actually created. In support of this contention it is pointed out that the article 931 occurs under chapter 6 of the title 22, treating of the subject taxation; while the power to levy taxes for local benefits is grant-

ed cities in chapter 11 of the title 22. The contention is that each chapter is complete in itself, and the limitation imposed in one chapter cannot be applied to the exercise of any power conferred in another chapter. It is further argued that the words "no taxes," used in article 931, are used in the sense given to the word "taxes" in the Texas Constitution, as interpreted by the following decisions: Higgins v. Bordages, 88 Tex. 458, 31 S. W. 52, 803, 53 Am. St. Rep. 770; City of Austin v. Nalle, 102 Tex. 536, 120 S. W. 996; Storrie v. Houston City St. Ry. Co., 92 Tex. 129, 46 S. W. 796, 44 L. R. A. 716; Storrie v. Woessner, 47 S. W. 837; Id., 51 S. W. 1132; Allen v. Galveston, 51 Tex. 302; Austin v. G., C. & S. F. Ry. Co., 45 Tex. 234; Roundtree v. Galveston, 42 Tex. 613; Taylor v. Boyd, 63 Tex. 533; 1 Desty, Taxation, § 4, pp. 5–7. While the contention of counsel for appellee deserves great consideration and is quite persuasive, we think the more accurate conclusion is that each chapter of the title 22, delegating municipal powers to cities, is not distinct and complete, and the Legislature never so intended them. For instance, the first chapter provides for a city council by which the city power is to be exercised. This applies to the exercise of each and every power to be exercised by the city authorized by each chapter under the title. If there were any doubt about any other of the chapters in title 22 being incomplete in itself, there can be none as to chapter 11, for the closing article of chapter 11, § 1017, expressly states that the power given in chapter 11 is cumulative of or in addition to other existing laws pertaining to cities. "This chapter shall not repeal any law, general or special, already in existence, pertaining to the making of such improvements, but the provisions of this chapter, and of resolutions or ordinances passed pursuant thereto shall be cumulative of, and in addition to, such existing laws."

Neither do we think the words "no taxes," as used in article 931, are limited to mean taxes for general revenue, the meaning in which the word "taxes" is used in the Constitution. It is, of course, true that the funds procured by special assessments for local improvements are not funds raised for revenue for general purposes. However, "such special assessments are an exercise of the taxing power" of the municipal corporation. 4 Dillon, Mun. Corp. (5th Ed.) § 1430, p. 2491, note 1. This taxing power cannot be exercised at all by the city unless expressly authorized by the Legislature. In this case the power, with limitations, is given in chapter 11, tit. 22. The taxing power cannot be exercised except in the manner provided by the statute. Chapter 11 does not expressly say that the cities accepting it can exercise the taxing power therein granted in a mode different from that required for exercising any other taxing power. On the other hand, article

1017 of that chapter expressly provides that the provisions of other chapters of that title are not repealed, but are cumulative of or in addition to the powers delegated by chapter 11. The Legislature on March 15, 1875 (Acts 14th Leg. [2d Sess.] c. 100), passed the act incorporating cities and towns, in which act the chapter on taxation and the chapter empowering assessments for benefits for street paving were expressed practically in the same language now used in chapters 6 and 10 of title 22. In 1875 the Legislature expressly stated in section 127 that the special assessment "shall be imposed, levied and assessed as taxes." In section 128 the special assessment is called "said tax" as many as six times. In section 129 of the same act of 1875 the special assessment for streets is called an "assessment of taxes." From this it seems most probable that the Legislature of 1875 understood the word "taxes," as used in the act for incorporating cities and towns, to mean special assessments, and did not use the word "taxes" in the restricted meaning of taxes for general revenue.

Again, in 1909, when the Legislature passed the act which in 1911 became incorporated in the title 22 as chapter 11, it refers to these special assessments as "taxes." See V. S. R. T. C. St. art. 1010.

We believe the correct interpretation of title 22 is that cities incorporated thereunder cannot exercise any taxing power authorized in any chapter of title 22 unless the ordinance levying the tax be consented to by two-thirds of the aldermen elected. The decisions defining the meaning of "taxes" as used in the Constitution bear no analogy to the question here discussed. French v. Barber Asphalt Paving Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879; Cole v. Forto, 155 S. W. 350. The ordinance of December 23, 1912, which levied the tax, received only four votes. It needed five; therefore it is void.

We omit discussion of the remaining four propositions submitted under this first assignment, which we sustain for the reasons given in our consideration of the first two propositions.

The foregoing reasons also dispose of the second and third assignments, which are sustained.

[5] Under the fourth assignment, which urges that the court erred in overruling appellant's second special exception to the sufficiency of appellee's allegations, the following proposition is submitted:

"The paving certificates described by appellee in its first amended original answer and cross-actions, and which are made the basis of such cross-action, were never legally 'issued' by the city of Brownsville, in the sense of having been delivered to a third party for a legal consideration, as is fully shown by the allegations of said answer and cross-actions, and could not become the basis of any claim or demand, as

against appellants,' or their property, until so issued."

It was alleged by the appellee that all improvements had been paid by the city of Brownsville with proceeds from bonds voted and issued therefor, and that the city is the owner of the paving certificates, which were never sold or hypothecated.

· We think the certificates were never legally issued, and therefore never became valid obligations against the appellants. 2 Dillon, Munic. Corp. (5th Ed.) § 902, p. 1413, note 3; Brownell v. Greenwich, 114 N. Y. 518, 22 N. E. 24, 4 L. R. A. 685; Hidalgo County Drainage Dist. v. Davidson, 102 Tex. 539, 120 S. W. 849; Vernon's Sayles' R. C. St. art. 1011. The fourth assignment is sustained.

[6] The fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, twenty-ninth, and thirtieth assignments complain of the court's findings of fact and conclusions of law. No exception was taken to these findings, and no request was made for additional findings. Article 1989, Vernon's Sayles' Civil Statutes; I. &. G. N. Ry. Co. v. Diaz, 156 S. W. 907; Tenzler v. Tyrrell, 32 Tex. Civ. App. 443, 75 S. W. 57; Bank of Ft. Worth v. Stout, 61 Tex. 567; T. & F. S. Ry. Co. v. Hartford Ins. Co., 44 S. W. 533; Rule 27 for Courts of Civil Appeals (142 S. W. xii); Rule 62a for Courts of Civil Appeals (149 S. W. x); Alcott v. Spencer Optical Mfg. Co., 31 S. W. 833. The assignments 5 to 12 and 14 to 30, inclusive, are overruled.

The thirteenth assignment complains of error in the conclusion of law by the trial court, because two-thirds of the members of the city council present did not vote in favor of the resolution declaring the improvements proposed for district No. 2 for the public interest. The evidence shows seven aldermen were present and five of the seven voted in favor of the resolution. Counsel for appellee called special attention to this fact in their brief on page 11. We examined the statement of facts, and interpret the record in accord· with appellee. The thirteenth assignment is overruled.

Because of the errors presented in the first, second, third, and fourth assignments, all of which we have sustained, the judgment of the trial court is reversed in so far as it affects appellants or their property, and here rendered against the appellee, the city of Brownsville, and in favor of appellants. In so far as the judgment affects parties before the trial court who did not appeal and from which part of the judgment no appeal was taken, the judgment of the trial court is not disturbed.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes