CITY OF BONHAM V. H. E. TAYLOR ET AL.

No. 7115.

1. **Sureties of City Treasurer.**—The sureties on a city treasurer's bond may take such steps, as by injunction, as may be necessary to protect themselves against a misappropriation of the city funds in the hands of such treasurer.

2. **City Treasurer is the Only Custodian of its Funds.** — The city treasurer is the lawful and only lawful custodian of money belonging to the city.

3. **City Authorities Can Not Loan Money Except Sinking Funds.** — Municipal corporations existing under the general law have power to raise funds for special purposes enumerated in the statute, and to use such funds for the purposes for which they are raised, but we know of no power conferred on them to become *money lenders* except of a sinking fund raised to meet the payment of a debt.

4. **City Funds.**—The manner and place of keeping city funds is under control of the treasurer. The city council can not control his acts as to where he shall deposit the city funds.

5. **City May Not Loan its Special Funds.**—Under the general incorporation law towns and cities are not empowered to loan their funds. It is not contemplated

that a bank where the funds may be deposited shall become owner of the money and a debtor therefor to the city.

6.  Same — Statutes Discussed. — Articles 370, 420, and 424, Revised Statutes, discussed, and it is held that they do not empower a city to loan its funds other than accumulated sinking funds.

7.  Joint Actors.—If the sureties of the city treasurer prosecuting an injunction suit are not liable in damages to the city, it can not be held that a bank at the time the depository of the city funds could be liable for aiding and advising the suit by the sureties for its own benefit.  The act being lawful, no one participating in it is culpable.

APPEAL from Fannin.  Tried below before Hon. H. W. Lightfoot, Special District Judge.

The opinion states the case.

*Lusk & Thurmond* and *Richard B. Semple*, for appellant.—There are three legal propositions in this case.  The first is whether the city of Bonham, incorporated under the General Laws of Texas, acting in conjunction with its treasurer, could deposit its special funds, not needed to be presently expended, with a reliable bank on interest for the term of six months or more, until said money should be needed by the city to be expended for the purpose for which it was raised.  This question rests on the proper interpretation of articles 370, 420, and 424 of the Revised Statutes of Texas.  The second question, and the most important one, is, can an officer of a corporation unlawfully procure the issuance of an injunction and thereby retain in the possession of the corporation in which he is interested a large sum of money from which the corporation derives large profits, and the owner of the money be unable to recover his damages from either the officer or the corporation by reason of the wrongful issuance of the injunction, because the officer did not use the money himself and the corporation did not procure the injunction?  The court below held the above proposition to be the law of the case, for it sustained plaintiff's exceptions to intervenor's claim for damages "except that portion which objects to 8 per cent interest as a measure of damages for money used, which was overruled."  The court in its charge to the jury so limits the question of damages.  In its judgment upon the verdict of the jury it carries out this principle.  We do not believe this proposition is sound law.  The third proposition is, that to authorize a citizen to restrain the acts of a public officer by injunction it must be shown that plaintiff's rights will be irreparably injured by the acts which it is sought to enjoin.  On this point the court, following the decision of Caruthers v. Harnett, 67 Texas, 131, decided against the legality of the injunction in this case.

*Taylor & Galloway*, for appellees.—1.  The city council's control over the special fund ceases when the money is turned over to the bonded

treasurer, except for the purpose for which said funds were created. Rev. Stats., art. 372.

2.   The city treasurer when duly elected and qualified by giving the necessary bond and otherwise complying with the law became the custodian of the money of the city, and is responsible for any loss as such treasurer.   Rev. Stats., art. 365; Beard v. City of Decatur, 64 Texas, 7; Bastrop Co. v. Hearn, 70 Texas, 564; Wall v. McConnell, 65 Texas, 397.

3.   When money is deposited with a bank by a party subject to check, or is deposited on time and time certificate of deposit taken, the money becomes the property of the bank, and the relation of debtor and creditor exist.   33 Am. Rep., 114, 115; 29 Am. Rep., 224; 35 Am. Rep., 475; 41 Am. Rep., 322.

STAYTON, CHIEF JUSTICE.—The city of Bonham, for the purpose of raising money with which to construct waterworks, issued and sold bonds, on which it received over $38,000, which went into the custody of its treasurer J. C. Saunders, and this he had deposited in the First National Bank of Bonham.   Subsequently the city council made an arrangement with the Fannin County Bank to lend to it $30,000 of the money for the period of six months unless the city should sooner need the money for the purpose for which it was obtained, and to this end the treasurer had been directed to turn over to the borrowing bank that sum of money, for which he was to take a deposit certificate bearing interest at the rate of 5 per cent per annum for six months in accordance with the agreement.   The treasurer was about to obey the order of the city council, when the sureties on his official bond, deeming such use of the money to be a misappropriation, instituted this suit to restrain the treasurer from complying with the arrangement between the bank and the municipal authorities.   A writ of injunction issued, and when the treasurer answered he requested that the city be made a defendant; whereupon the city intervened and alleged that the suit was instituted at the instance of the First National Bank and for its benefit; that the bank had used the money since the service of the writ of injunction in its business, and thereon had made a profit equal to 12 per cent per annum, for which it prayed judgment, and against the plaintiff it prayed judgment for damages equal to interest at the rate of 8 per cent per annum on $30,000 from the time injunction was served, for 10 per cent damages for delay, for interest at the rate of 5 per cent per annum on the $30,000 from the time the writ of injunction was served, and further claimed $200 as attorney fees.   The First National Bank came in and filed a general denial.

The court sustained demurrers to so much of the pleadings of the city of Bonham as set up the contract it had made with the Fannin County Bank and to its claims for damages against plaintiffs, but instructed the jury to award as damages against the First National Bank

a sum equal to interest on money detained in that bank for the time intervening the issuance of the writ of injunction and the time of trial at the rate of 8 per cent per annum, if the jury believed from the evidence that the suit was brought at the instance and for the benefit of the bank; but upon this issue the finding was against the city, and the court then entered a judgment dissolving the injunction, awarding costs to the defendant against the plaintiffs, adjudging that the city take nothing against the First National Bank and giving it costs against the city, and from that judgment the city appeals.

It is urged that the court erred in sustaining exceptions of the plaintiffs to the city's petition in intervention in which it set up the agreement between itself and the Fannin County Bank, and sought to recover the several items of damages therein claimed.

The sureties on the treasurer's bond had the right to take such steps as were necessary to protect themselves against a misappropriation of the funds of the city in his custody as treasurer, and if the act he was about to do when the suit was brought amounted to a misappropriation then the ruling of the court was correct; and the suing out of the writ of injunction gave to the city no lawful claim for damages.

The treasurer was the lawful, and only lawful, custodian of moneys belonging to the city, and this it was his duty to receive and securely keep and to pay out upon the order of the mayor, properly attested by the secretary, when issued in pursuance of a lawful direction of the city council.   Rev. Stats., art. 365.

Municipal corporations existing under the general law have power to raise funds for special purposes enumerated in the statute and to use such funds for the purposes for which they were raised, but we know of no power conferred on them to become money lenders except of a sinking fund raised to meet the payment of a debt, nor do we know of any power conferred on such corporations to control the deposits which a treasurer may make of the funds of which he has the proper custody, though it certainly might take steps to secure the fund in a case in which this might become necessary for the security of the fund if imperiled by any fraudulent or wrongful act of the treasurer.

The statute provides that such cities shall have power "to provide by ordinance special funds for special purposes and make the same disbursable only for the purpose for which the fund was enacted; and any officer of the city misappropriating said special fund shall be deemed guilty of malfeasance, and shall, on complaint of any one interested in said fund misappropriated, be removed from office, and be incapable thereafter of holding any office in said city."   Rev. Stats., art. 372.

The city had power to raise a fund for the construction of waterworks, under the limitations imposed by law, but when such a fund was raised it could only be used for the specific purpose, and became, within the meaning of the law, a special fund.   If it could be loaned

for a day it could be loaned for such longer period as the city authorities might see proper to lend it, and thus a special fund be raised for a lawful purpose and used for a purpose essentially unlawful.

It may be replied that in this case the city, under the agreement with the Fannin County Bank, would not have been bound to leave the fund with that bank for any definite period if it needed the money to use for the purpose for which it was raised, but this does not affect the law of the case. It was intended that the money should cease to be the property of the city and should become the property of the bank to become its debtor, and we know of no law which authorized the city thus to surrender its title to the special fund and to receive in lieu thereof the promise of the bank to repay it.

The law contemplates that the funds of such municipal corporations shall remain in possession of their treasurers, who, for the security of such corporations, are required to give a bond, and it never was contemplated that they might be placed by the corporations in the possession and keeping of any other person, whether that person be a mere custodian or a borrower of the fund itself.

The treasurer might have selected the borrowing bank as a depository of the fund, but if in pursuance of an unlawful order he had delivered the fund to that bank as a borrower he and the sureties on his bond would have been liable for a misappropriation of the fund, and the order would have been no protection to them. For these reasons the court below did not err in sustaining the exceptions of the plaintiffs to the petition in intervention filed by the city.

It is contended, however, that articles 370, 420, and 424, Revised Statutes, conferred on the city the power to lend the special fund.

The first simply declares that "the city council shall have the management and control of the finances and other property, real, personal, and mixed, belonging to the corporation," but this means a control in accordance with law and not in violation of law.

The second simply empowers such cities to borrow money for certain purposes and to appropriate the money thus raised or coming from other sources to enumerated purposes; and that to which the fund in question was about to be appropriated was not one of these purposes.

The last can have no application to this case, unless it be true that the power to lend the sinking fund therein referred to would authorize the lending the city was about to make. Among other things that article contains the following: "It is hereby made the duty of the Comptroller to see that a tax is levied and collected by the city sufficient to pay the interest semi-annually on all bonds issued, and to create a sinking fund sufficient to pay the said bonds at maturity, and that said sinking fund is invested in good interest bearing securities."

There can be no claim that any part of the money in question was a sinking fund which the city would have power to lend, for the entire

fund was money borrowed and not money raised by taxation for a sinking fund.

If the city had no cause of action against the plaintiffs growing out of the injunction, we do not see how it could have a cause of action against the First National Bank growing out of the same fact, even if that bank had influenced the action of plaintiffs in order to continue the depository of the treasurer; for if the action of the plaintiffs violated no right of the city no cause of action could exist against the bank for aiding or encouraging plaintiffs, even though the bank may have expected to derive benefit from the suit indirectly.

The petition in intervention does not undertake to set up a cause of action against its treasurer or the First National Bank for conversion of its funds, but only seeks to recover damages because by the writ of injunction the city was prevented from using a fund in an unlawful manner and thereby making profit in the way of interest.

We find no·error in the judgment of which the city can complain, and it will be affirmed.

*Affirmed.*

Delivered May 12, 1891.