

# The Attorney General of Texas

September 16, 1986

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

Texas, Suite 700
ton, TX. 77002-3111
223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Charles D. Houston
District Attorney
One East Main
Bellville, Texas    77418

Opinion No. JM-545 *Indexed*

Re: Disposition of interest earned on unused portion of road bond proceeds

Dear Mr. Houston:

You have requested an opinion from this office concerning the disposition of money earned as interest on the invested proceeds of tax bonds authorized by the Austin County electorate for the construction, maintenance and operation of county roads. See V.T.C.S. art. 6702-1, §4.411 et. seq. Your question is:

> Is it proper for the interest on the unused portion of the bond proceeds to be added to the principal sum, or should such interest be deposited to the Interest and Sinking Fund for retirement of the bonds?

You advise that, pursuant to a bond election in 1982, $3,000,000 in bond proceeds were received, but not all the proceeds were expended. You further advise:

> About June of 1983, the commissioners began placing the unused portion of the bond proceeds in 30 day certificates of deposit. As interest accrues on these deposits, it is added to the sum of the next monthly certificate of deposit; it is not placed in the Interest and Sinking Fund for retirement of the bonds. (Emphasis deleted).

The bonds in question were issued under article 6702-1, V.T.C.S., the County Road and Bridge Act. Section 4.411(b) of the act provides:

> Any county or any political subdivision of a county or any road district may issue bonds for the purpose of the construction, acquisition by purchase, maintenance, and operation of macadamized, graveled, or paved roads and turnpikes or in aid of these purposes in any amount not to exceed

one-fourth of the assessed valuation of the real
property of the county, political subdivision, or
road district and may levy and collect ad valorem
taxes to pay the interest on the bonds and provide
a sinking fund for the redemption of the bonds.
The bonds shall be issued in the manner provided
in this part and as contemplated and authorized by
article III, section 52, of the Texas Constitu-
tion. (Emphasis added).

Since 1904, article III, section 52, of the constitution has
authorized a county, upon two-thirds majority vote of its electorate,
to incur debt by issuing bonds (not to exceed a specified amount) for
certain purposes only. Among the purposes: "The construction,
maintenance and operation of macadamized, graveled or paved roads and
turnpikes, or in aid thereof." In 1970, a new subsection was added to
section 52 lowering the "two thirds" voting requirement for county
road bonds, but retaining provisions for the levy and collection of
taxes to pay the interest on the bonds as it becomes due and to
"provide a sinking fund for redemption of the bonds." See also Tex.
Const. art. XI, §7. The new article III, section 52, subsection (c)
states:

[B]onds may be issued by any county in an amount
not to exceed one-fourth of the assessed valuation
of the real property in the county, for the
construction, maintenance, and operation of
macadamized, graveled, or paved roads and
turnpikes, or in aid thereof, upon a vote of a
majority of the resident property taxpayers voting
thereon who are qualified electors of the county,
and without the necessity of further or amendatory
legislation. The county may levy and collect
taxes to pay the interest on the bonds as it
becomes due and to provide a sinking fund for
redemption of the bonds.

art. 6702-1

Although section 4.402 of the County Road and Bridge Act reserves
to the appropriate sinking fund all interest or investments of money
in sinking funds, neither the constitutional provision nor section
4.411(b) of article 6702-1, V.T.C.S., nor any other statutory provi-
sion we have found, expressly specifies the disposition to be made of
interest earned by investing road bond proceeds. But the County Road
and Bridge Act is clear about the disposition of the proceeds
themselves. Section 4.424 of article 6702-1, V.T.C.S., reads:

That portion of the purchase money representing
capitalized interest shall be placed in the county
treasury of the county or of the political

> subdivision or road district, as the case may be,
> and shall be used to pay interest coming due on
> the bonds or bond anticipation notes, and the
> remainder of the funds, after the payment of the
> costs of issuance of the bonds or bond
> anticipation notes, shall be placed in the county
> treasury of the county to the credit of the
> available road fund of the county or of the
> political subdivision or road district or the
> county, as the case may be.

To better clarify the issue raised by your inquiry, it is useful to review some aspects of bond law. First, tax bonds, such as those involved here, are secured by all taxable property in the county. V.T.C.S. art. 6702-1, §§4.411, 4.412, 4.425, 4.426. If principal and interest payments on the obligations are not paid when due, the bond holders can force county officers to levy and collect taxes to meet the bond obligations. City of Austin v. Cahill, 88 S.W. 542 (Tex. 1905). See 47 Tex. Jur. 2d Public Securities and Obligations, §45 at 378 (1962).

Second, a "sinking fund," as defined by the 1859 edition of Bouvier's Law Dictionary 527 (vol. II 1859) (15 years before the term was used in the 1876 Texas Constitution[1]), is "[a] fund arising from particular taxes, imposts, or duties, which is appropriated towards the payment of the interest due on a public loan and for the gradual payment of the principal." See Elser v. City of Ft. Worth, 27 S.W. 739 (Tex. Civ. App. 1894, writ ref'd). The establishment of a sinking fund is made mandatory by article XI, section 7 of the Texas Constitution whenever a county incurs a debt, including debts authorized by article III, section 52. See Attorney General Opinion O-763 (1939).

Third, an order of the commissioners court for a bond election that specifies the purposes to which the proceeds will be applied becomes a contract with the voters, and the proceeds cannot be legally applied to different or other purposes. Black v. Strength, 246 S.W. 79 (Tex. 1922). Of course, the commissioner's court may properly specify only those purposes for which the constitution allows bonds to be issued, and the language of article III, section 52 allowing the issuance of bonds voted by the electorate for road purposes, "or in aid thereof" has been construed to permit the use of bond money for incidental, directly-related purposes "where necessary" to accomplish the main purpose, "but not as an independent or exclusive undertaking." Aransas County v. Coleman-Fulton Pasture Co., 191 S.W. 553, 556 (Tex. 1917).

---

1. Article 12, section 23 of the constitution of 1869 also referred to "sinking funds" for the redemption of debt.

In considering your question, it is also useful to keep in mind the effect of using bond proceeds to increase the principal sum available for expenditure on projects authorized by the voters instead of limiting that sum to the amount authorized and devoting any excess to a reduction of the bonded indebtedness. The practice could be used by county officials to circumvent constitutional limits of taxation. See Ault v. Hill County, 11. S.W. 425 (Tex. Civ. App. 1908) aff'd. 116 S.W. 359 (Tex. 1909); Jefferson Iron Company v. Hart, 45 S.W. 321 (Tex. Civ. App. 1898, no writ). Such limits are for the protection of taxpayers and to secure economy in the expenditure of public moneys.

In the situation you describe, we are advised that, of the Austin County bonds authorized to be sold in the amount of $3,000,000 for road purposes (and in aid thereof), all were sold at once, but less than $1,000,000 of the proceeds have been spent for those purposes; the rest of the purchase money paid the county for the bonds has been invested at a rate of interest not greater than 7.85%. (The bonds bear interest at 12.5%. See V.T.C.S. art. 717k-2, §2). Thus, because at least two million dollars worth of bonds were sold before the money was needed, the taxable property in Austin County has become indebted for tens of thousands of dollars in interest earned by bonds prematurely sold.

You indicate that in the meantime, the costs of "numerous miles of black topping and other road improvements" were paid from the regular county budget when they should have been charged against the bond proceeds. As a result, property in Austin County has been doubly taxed to pay for the road improvements made. The practice of adding the interest earned by unused road bond proceeds to the principal amount, rather than using it to reduce the prospective tax burden, exacerbates the inequity. Cf. Attorney General Opinion C-753 (1966).

Section 4.424 of the County Road and Bridge Act (set out above), which governs the disposition of road bond "purchase money" [proceeds], states that after putting aside the portion of the purchase money representing "capitalized interest" and paying the costs of issuance of the bonds, the "remainder of the funds" shall be credited to the available road fund. It is interest earned by the investment of this "remainder" portion of the bond proceeds with which we are concerned. Whether the interest also becomes part of the "remainder" within the meaning of section 4.424.

Normally, the rule is that interest is an accretion to the principal fund earning it and, unless lawfully separated from it, becomes a part of the fund, but the overriding rule is that the disposition of interest earned by a fund cannot contravene constitutional requirements. Lawson v. Baker, 220 S.W. 260, 272 (Tex. Civ. App. - Austin 1920, writ ref'd). It is for that reason that we cannot consider the interest earned from investment of the bond proceeds to

be part of the "remainder" which section 4.424 sends to the available road fund. The use of public debt in the form of bonds to create a fund for investment as an independent or exclusive undertaking is not a purpose sanctioned by article III, section 52, of the Texas Constitution. See Attorney General Opinion O-7393 (1946).

The section 4.424 provision that "capitalized interest" be used to pay interest coming due on the bonds sold is instructive of the proper disposition to be made of interest incidentally earned by unneeded road bond proceeds. Cf. V.T.C.S. art. 6702-1, §4.446. "Capitalized interest" is related to "accumulated interest" as that term is used by article 708, V.T.C.S.

Article 708, V.T.C.S., provides that county bonds shall never be sold at less than their par value and accumulated interest, exclusive of commissions. As explained by Attorney General Opinion O-121 (1939):

> The statutes provide that bonds shall never be sold for less than par and accrued interest to date of sale. The authorities are in accord with the conclusion that the par value of an interest-bearing bond on the date of issuance is a value equal to the principal thereof, and on any day subsequent to its issuance it is a value equal to the principal plus the accrued interest. The nominal or par value of such a bond necessarily increases with each succeeding day by the amount of interest accrued which on its face it promises to pay. Hence, the money received from the sale of bonds at par plus accrued interest represents the par value of the security.

In determining the disposition to be made of such accrued interest when received by the county, Attorney General Opinion O-121 reasoned:

> The total face amount of the bonds issued and sold represents the maximum amount authorized by the voters, or a diminished part thereof, and interest accruing on such bonds issued but not yet sold is specifically an accrued liability against the issuing body, and which must be discharged out of taxes levied and collected for that purpose. Accordingly, the sum received as accrued interest in the sale of the bonds should properly be an offset to such accruing liability. Hence, it is the opinion of this department that the correct procedure would be to credit such sum to the

> interest and sinking fund, thereby insuring the
> taxpayer the benefit of the offset.

Thus, when the sale of bonds is delayed until the bond proceeds are needed for the project authorized by the voters, the "accumulated" interest earned by the bonds during the delay is capitalized and results in the county receiving more borrowed money than the electorate authorized for the project; the amount representing the excess, i.e., the accumulated interest, must be used to reduce the indebtedness.

If, as here, rather than delaying the sale of bonds until the proceeds are needed, county officials sell the bonds at once and invest the proceeds (thereby denying to taxpayers and to the interest and sinking fund the benefit of interest that would accrue before sale), cf. Navarro County v. Corsicana National Bank, 287 S.W. 501 (Tex. Civ. App. - Waco 1926, writ ref'd), we believe the investment income is properly to be credited to the interest and sinking fund to help retire the debt, and that it cannot constitutionally be made available or used for any other expenditure or purpose until the debt is retired. Tex. Const. art. III, §52. Cf. Attorney General Opinion JM-142 (1984); O-6973 (1945). If the authorized funds voted for the approved projects prove insufficient, the recourse of county officials is to return to the electorate for additional authorization. Cf. Tex. Const. art. VIII, §9 (additional road tax).

Our conclusion is bolstered by similar ones reached in the past concerning bond proceeds unneeded for completed bond projects. In Attorney General Opinion O-6973 (1945), bond money voted for roads was not used because the state built the roads itself. The opinion concluded that the surplus could be used only for the retirement of the outstanding obligations and should be placed in the sinking fund for that purpose. In a similar situation, it was held by Attorney General Opinion V-684 (1948):

> If the bond purpose has been completed, then the
> $10,000 left over should be used to retire out-
> standing bonds. If the owners of such bonds are
> unknown to the county, then the money should be
> placed in the sinking fund.

The principle is the same. Unneeded receipts from bond sales cannot be used for any purpose other than to retire the bonded indebtedness. After the indebtedness is retired, any remaining surplus may be used for other projects, but counties are not authorized to artificially construct or perpetuate a surplus. See V.T.C.S. art. 6702-1, §4.411(c); Attorney General Opinion JM-530 (1986); Attorney General Opinion C-753 (1966). Cf. Attorney General Opinion O-908 (1939).

The purpose of the bond sale authorized by Austin County voters was to provide $3,000,000 in borrowed funds as needed, to be available for the accomplishment of road projects -- for the repayment of which their taxable property was to stand as security. We have not been provided a copy of the Austin County 1982 road bond resolution or order. For purposes of this opinion we have assumed (without deciding) that investment of the bond proceeds in 30 day certificates of deposit is not prohibited by that instrument or by law. But whatever "investment" authority may now be extended over road bond proceeds by statute[2] or by the bond order, it cannot be read as allowing the use of the funds to augment that amount, i.e., to make available for such expenditure more than the electorate authorized on the projects for which the bonds were voted. Such a reading would allow bond proceeds to be used for an independent or exclusive undertaking not necessary accomplishment of the purpose for which the bonds were authorized, and would violate article III, section 52, of the Constitution of .Texas limiting the purposes for which such bonds may be voted. Cf. Attorney General Opinion O-1952 (1940).

Attorney General Opinion C-537 (1965) held that a school board might deposit interest earned by excess school bond proceeds in the sinking fund created to retire the indebtedness. To the extent the opinion suggests the board possessed discretion to do otherwise, it is disapproved. A similar question was presented in Attorney General Opinion H-1174 (1978), which construed section 20.43 of the Education Code to permit the use of such interest for other purposes. To that extent, it is disapproved, also.

In our opinion, any interest earned from the investment of the bond proceeds must be deposited in the interest and sinking fund to help retire the bonded indebtedness.

---

2. Until 1981, there was not a statute permitting county officials to invest bond proceeds. See Attorney General Opinions MW-224 (1980); V-1182 (1951); O-4746 (1942). In that year, section 7 of article 717K-6, V.T.C.S., the Bond Procedures Act of 1981, was enacted to allow the investment of "revenue" bond proceeds "until needed," and article 2549, V.T.C.S., was amended to allow particular investment of funds in the county depository "not required immediately," so long as no law expressly prohibited it and the depository contract was not contravened. In the same year, article 2546, V.T.C.S., which allows the placement of county funds on "time deposit," was amended. See also V.T.C.S. art. 2547 ("county funds derived from the sale of securities"); Navarro County v. Corsicana National Bank, 287 S.W. 501 (Tex. Civ. App. - Waco 1926, writ ref'd). Cf. City of Bonham v. Taylor, 16 S.W. 555 (Tex. 1891); Austin v. Freestone County, 288 S.W. 870 (Tex. Civ. App. - Waco 1926, writ ref'd); Austin Bros. Bridge Co. v. Road District No. 3 of Liberty County, 247 S.W. 674 (Tex. Civ. App. - Beaumont 1923, writ ref'd).

## S U M M A R Y

Any interest earned from investment of county road bond proceeds must be deposited in the interest and sinking fund to help retire the bonded indebtedness.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General